Bobby Eugene CANNON, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 87–SC–787–MR.

Supreme Court of Kentucky.

Sept. 7, 1989.

Mark A. Posnansky, Asst. Public Advocate, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Denise A. Garrison, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENS, Chief Justice.

Appellant appeals, as a matter of right, from his multiple convictions for rape in the first degree, sodomy in the first degree, kidnapping, felony theft by unlawful taking, and persistent felony offender in the first degree. Following a jury trial, he received a sentence of 30 years in prison.

Appellant was convicted as the result of two separate episodes of kidnapping and various sexual offenses. The first incident occurred on August 7, 1986 and involved C.D. According to C.D., she was a patron at Shack II, a local bar in Daviess County, on the night in question. Appellant, in response to a request, offered to give her a ride to another drinking establishment. He did not take her there; rather, he allegedly took her to his house where he committed rape and other sexual offenses.

The second episode involved two women, D.C. and A.N. Based on their testimony, it appeared that on August 12, 1986, they were patrons of yet another bar, the Roam Inn. Appellant approached the two women and convinced them to get into his truck and go to Owensboro with him to drink coffee. Rather than driving to Owensboro, appellant took them for a "joy ride" in the rural area of the county. A.N. indicated she needed to go to the bathroom, and appellant stopped the truck and let her out. When she did not get back into the vehicle, appellant threatened to kill her and allegedly struck her with the truck. Not seriously injured, she ran away and hid in the bushes. D.C. testified that, following this escape, appellant raped and sodomized her.

Appellant testified on his own behalf. With respect to the first charge, involving C.D., he admitted having sex with her, but testified he did not threaten her and that she consented to his actions. Regarding the second charge, involving A.N. and D.C., appellant testified he let A.N. out of the truck but denied that he threatened her or hit her with the truck. He also testified that D.C. consented to his sexual acts with her.

On appeal, appellant raises five issues, three of which we will discuss. The other two are meritless. Appellant asks us to reverse his conviction because: (1) the trial court erred when it refused to give a requested insanity instruction in spite of the evidence of insanity that was presented; (2) the trial court erred when it failed to give an offered instruction on unlawful imprisonment in the second degree with respect to the offense that involved A.N.; and (3)

that the trial court erred in refusing to sever the charges with respect to the August 7, 1986, incident and the August 12, 1986, incident.

We concur with appellant's position on Issues 1 and 2, and hence reverse his conviction. We disagree, however, with Issue 3.

## I. SHOULD THE TRIAL COURT HAVE GIVEN AN INSTRUCTION ON INSANITY?

Prior to trial, appellant served notice that he intended to introduce evidence of mental illness or insanity at the time of the offense(s). At trial, Dr. John Schremly, a psychiatrist, testified in some detail. He stated that appellant was suffering from an organic mental disorder. He conceded that appellant knew right from wrong, but he definitely felt that appellant may well have been unable to conform his conduct to the requirements of law. The doctor stated that there was, "... up to a 50/50 chance that he (appellant) didn't have the capacity to conform his conduct to the requirements of law." He reiterated this opinion on recross examination; and on redirect examination he stated it was "more likely than not" that appellant would have great difficulty conforming his behavior to the requirements of the law.

In addition, the doctor recounted evidence that indicated a family history of mental illness, that appellant suffered a serious head injury while serving in Vietnam, and that an intelligence test "strongly suggested" there was a possibility of appellant's having a central nervous system illness. In addition, appellant's father testified that his son was "not the same" after the war.

Moreover, the court had available to it a written medical report prepared by Dr. Schremly, which referred to the Vietnam injury, drug dependency, and "blackouts" suffered by appellant.

The trial judge, in a colloquy with Dr. Schremly, inquired as to whether he could "state with a reasonable degree of medical certainty" that appellant was insane at the time of the commission of the various

crimes. The doctor repeated what he had previously testified. Although the trial judge did not specifically say why he denied the requested insanity instruction, it is a reasonable assumption that it is because Dr. Schremly refused to say unequivocally that appellant was insane.

The Kentucky statute relating to, and setting forth the principle of insanity that was in effect at the time of the commission of the alleged crimes that are the subject of this appeal, is KRS 504.020. It provides as follows:

"Mental disease or defect—(1) A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

"(2) As used in this chapter, the term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

"(3) A defendant may prove mental disease or defect, as used in this section, in exculpation of criminal conduct." Id. (emphasis added).

The issue we address only concerns whether the evidence presented by appellant, as "exculpatory of criminal conduct," was sufficient to justify the giving of an instruction on the issue of "insanity" to the jury. The trial court thought not. We disagree.

Appellant argues there was sufficient proof of insanity to mandate the giving of an appropriate instruction. Appellee disagrees, claiming that the evidence of appellant's inability to conform his conduct was equivocal in that the doctor could not state that he was medically certain of appellant's inability to conform his behavior to the requirements of law.

It is textbook law that it is the duty of the trial court to instruct the jury on the whole law of the case. RCr 9.54(1).

"It is fundamental that in a criminal case it is the duty of the court 'by the instructions to give to the accused the opportunity for the jury to determine the merits of any lawful defense which he has.'" Sanborn v. Commonwealth, Ky., 754 S.W.2d 534, 550 (1988) (per curium, plurality) (quoting Curtis v. Commonwealth, 169 Ky. 727, 184 S.W. 1105, 1107 (1916)).

■ This general principle applies to the insanity defense. A silver thread that runs through our precedents on the question of insanity is that, if there is any evidence of insanity, even that of lay witnesses, the jury, under instructions, is the final arbiter of the ultimate question of the defendant's sanity (or insanity). Tunget v. Commonwealth, 303 Ky. 834, 198 S.W.2d 785 (1947).

In Corder v. Commonwealth, Ky., 278 S.W.2d 77 (1955), the question before us was whether there was sufficient "evidence of substance" to raise an issue of the appellant's insanity at the time of the offense. Id. at 79 (emphasis in original). The majority of the court answered the question in the negative. The court said that there was "not a shred of evidence in the record that at the time the offense was committed, Corder" was insane. Id. (emphasis in original). Appellant, who was convicted of voluntary manslaughter and who received a prison sentence of 21 years, was placed in jail immediately after the crime. Five days later, he was examined by a physician who diagnosed Corder as having advanced diabetes. He opined that Corder had had this condition for several months and that such condition was regularly accompanied by diabetic coma and shock. Moreover, Corder was not "rational" at the time of the examination. Though the doctor avowed that his case of diabetes was the "most advanced" he had ever seen, Corder was not undergoing treatment for the diabetes. In spite of this evidence, the trial court refused an instruction on insanity, and a majority of this court upheld that decision. Apparently, the majority felt that the evidence of insanity necessary to warrant an instruction had to be pinpointed, in time, to the moment of the occurrence of the crime. Finding no evidence of such a precise nature, presumably because of the transitory quality of diabetic coma and shock within

the diabetic condition, the majority upheld the trial court's decision.

Judge Porter Sims, in a very prophetic dissent, stated:

"If the majority opinion should be followed in the future, and I seriously hope it will not be, I cannot understand how in any criminal case a question of an accused's sanity can be submitted to a jury, unless he is examined by a score of physicians either a few minutes preceding or a few minutes succeeding the crime and such physicians pronounce him insane." *Id.* at 80 (Sims, J., dissenting).

Judge Sims concluded that the evidence of the doctor who examined Corder five days after the crime and found him to be "irrational from a diabetic condition which had existed for several months and in the most advanced stage the doctor had ever evidenced" was sufficient to submit the question of insanity to the jury. We agree with the dissent and overrule *Corder v. Commonwealth* to the extent that it, even inferentially, requires evidence of insanity to be pinpointed at the moment of the crime before it can be submitted to the jury for decision. We believe that, at the very least, the jury should have been permitted to hear the medical testimony, and, under instruction, make the decision based on all of the evidence, not just part of it.

In *Cooley v. Commonwealth*, Ky., 459 S.W.2d 89 (1970), although we denied appellant's contention that a specific instruction on his epilepsy should be given, we reiterated the rule that where a "defendant admits facts constituting an offense but interposes a legal excuse exonerating him from criminal intent, instructions should submit the excuse to the jury in concrete form." *Id.* at p. 91.

In *Edwards v. Commonwealth*, Ky., 554 S.W.2d 380 (1977), a key issue was the alleged error of the trial court in failing to direct a verdict of not guilty by reason of insanity. We discussed the defendant's burden of proof.

"Where one chooses to rely upon insanity as a defense, the burden rests upon him to prove to the satisfaction of the jury that at the time the offense was committed, as a result of a mental disease or defect, he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. KRS 504.-020; *also see Henderson v. Commonwealth*, Ky., 507 S.W.2d 454 (1974). Thus, the presentation of evidence merely proving the defendant to be suffering from some form of mental illness at the time of the offense, without also proving him unable to appreciate the wrongfulness of his conduct or to resist his impulse to commit the illegal deed due to the perceived mental disease or defect, will not relieve him from the consequences of his criminal act. *Newsome v. Commonwealth*, Ky., 366 S.W.2d 174, 177 (1962)." *Id.* at 383.

Upholding the trial court's denial of the defendant's motion for a peremptory instruction, we found that although the defendant has presented persuasive evidence of her mental disorder, she failed to show that on the morning of the crime her mental disorder had rendered her unable to appreciate the criminality of her acts or to conform her conduct. We further noted however,

"that the introduction of proof of insanity by a defendant does not place a burden on the Commonwealth to prove him sane; rather, it entitles the defendant to an instruction to the jury that they may find him not guilty by reason of insanity, and thus properly makes the issue of insanity a matter for the jury's determination." *Id.*

We do not quarrel with this discourse on the defendant's burden of proof and the nature of the evidence required to excuse the perpetrator of a crime by reason of insanity. *See also* KRS 500.070. The defendant in *Edwards* was required to present evidence not only of a mental disease or defect, but also that this disorder affected her ability to appreciate the criminality of her act or her ability to conform her conduct at the time of the offense. It was her failure to establish her *incapacity*, by virtue of a mental disorder, which supported the determination that she was not

entitled to a directed verdict. We concur with the court's final analysis that "the issue of insanity" is a matter for the jury's determination.

In *Brewster v. Commonwealth*, Ky., 568 S.W.2d 232 (1978), we again held that the determination of the question of insanity was the function of the trier of fact—in this case, the court. In *Wiseman v. Commonwealth*, Ky., 587 S.W.2d 235 (1979), even though the medical testimony was uniform in portraying appellant as the victim of a mental disease or defect, and even though that evidence was supported by lay testimony to the same effect, we upheld the right of the jury to make a determination that appellant was sane. We said:

"... The status of the law in Kentucky as to the propriety of submitting an issue of insanity to the jury is clearly stated in *Edwards v. Commonwealth*, Ky., 554 S.W.2d 380 (1977)....

. . . .

"As to the quality of the testimony of the expert witnesses, in *Tunget v. Commonwealth*, 303 Ky. 834, 198 S.W.2d 785 (1947), we held that even though all expert witnesses testify favorably for the accused as to his insanity, where there is any evidence indicative of his sanity, there is presented an issue of fact for a jury determination. It is not necessary that there be a battle between the experts as to the sanity of the accused. Oftentimes, lay witnesses testifying as to the customary conduct of an accused more nearly reflect his mental capacity than the high sounding names tagged to imaginary self-induced complaints." *Id.* at 237–38.

Finding from a review of the record that the jury had a sufficient basis for finding Wiseman sane at the time of the commission of the crime, we upheld the jury's determination. *Id.* at 238. In *Wiseman*, we reinforced the proposition that the appropriate factfinder is the sole arbiter of sanity/insanity, so long as there is *any* evidence relative to the issue which reasonably supports the factfinder's determination.

■ The evidence necessary in order to submit the issue of sanity/insanity to the jury certainly must be relevant to the two legal requirements set out in KRS 504.-020(1). As we have said, even lay testimony is acceptable, if relevant. A trial court and an appellate court, before determining the appropriateness of an instruction on insanity, must consider all the evidence; it must consider the totality of the evidence. If there is any probative evidence from which a jury could reasonably infer that at the time of the offense, as a result of mental disease or defect, the defendant lacked substantial capacity to either appreciate the criminality of his act or to conform his conduct to the requirements of law, the defendant is entitled to an instruction on insanity.

■ In the case before us, the trial court—seemingly—required *medical certainty* as a prerequisite to giving the requested instruction. As stated in *Rogers v. Sullivan*, Ky., 410 S.W.2d 624, 627–8 (1967), "certainty" is not the issue; what "counts" is whether the supporting evidence, taken as a whole, is sufficient to infer a "reasonable probability" the condition exists. Dr. Schremly's testimony, taken as a whole, was sufficient to submit the question of appellant's sanity/insanity to the jury.

## II. WAS APPELLANT ENTITLED TO AN INSTRUCTION ON UNLAWFUL IMPRISONMENT IN THE SECOND DEGREE?

Following the presentation of all the evidence in this case, appellant requested the trial court to instruct the jury on unlawful imprisonment in the second degree. This request was denied, and the correctness of the ruling is before us. We disagree, and reverse on this issue, also.

As previously stated, this issue was directed to the crime(s) committed against A.N. It will be recalled that appellant took A.N. and C.D. in his truck, ostensibly, to Owensboro for coffee. Instead, he took both women into the country. Appellant stopped the truck and let A.N. out when she stated she had to answer a call of

nature. Allegedly, appellant tried either to kill or injure A.N. by attempting to hit her with his truck. This evidence does not conclusively establish that appellant was trying to kidnap A.N. The evidence indicates that he did try to strike her with his truck when she refused to get back into the truck. There is no evidence that he intended to kill her at any time she was in the truck. As a matter of fact, appellant was *acquitted* of a charge of attempted murder of A.N. Moreover, there is no evidence that appellant had any intent to inflict bodily injury on A.N. at any time while she was in the truck.

KRS 509.040 is the so-called kidnapping statute. KRS 509.030 sets out the elements of the crime of unlawful imprisonment in the second degree.

"A person is guilty of unlawful imprisonment in the second degree when he knowingly and unlawfully restrains another person."

The essential difference between kidnapping and unlawful imprisonment in the second degree is that kidnapping requires that the restraint of the individual is accompanied by the intent (1) to hold the victim for ransom, or (2) to accomplish or advance the commission of a felony, or (3) to inflict bodily injury on the victim or terrorize the victim, or (4) to interfere with the performance of a governmental or political function, or (5) to use the victim as a shield or hostage. KRS 509.040(1)(a), (b), (c), (d) and (e).

■ It is axiomatic that a trial court must instruct the jury on all lesser included offenses which are justified by the evidence. *Martin v. Commonwealth*, Ky., 571 S.W.2d 613 (1978), *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 (1986). Unlawful imprisonment in the second degree is a lesser included offense in the crime of kidnapping. *McClellan*, 715 S.W.2d at 469.

■ There is no evidence in this case to show that the *sole* intent of appellant, with respect to A.N., when she was in appellant's truck, was to kidnap her. (There is, of course, evidence to justify a jury's belief that he did, in fact, kidnap A.N.). The

absence of such unequivocal evidence clearly opens the door to allow a jury to determine that, in fact, appellant simply intended to "knowingly and unlawfully" restrain A.N. It was, quite simply, under the evidence, a jury question as to whether appellant intended to commit a felony, etc., while A.N. was in the appellant's vehicle. But it would also have been reasonable for the jury to have found that appellant had no intention to commit a felony, etc., upon A.N. Such being the case, we believe that the jury should have been instructed on the offense of unlawful imprisonment in the second degree.

### III. WAS IT ERROR FOR THE TRIAL COURT TO DENY APPELLANT'S MOTION FOR A SEVERANCE OF THE TRIAL OF THE TWO EPISODES?

RCr 6.18 is as follows:

"Two (2) or more offenses may be charged in the same complaint or two (2) or more offenses whether felonies or misdemeanors, or both, may be charged in the same indictment or information in a separate county for each offense, if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan."

RCr 9.12 provides:

"The court may order two (2) or more indictments, informations, complaints or uniform citations to be tried together if the offenses, and the defendants, if more than one (1), could have been joined in a single indictment, information, complaint or uniform citation. The procedure shall be the same as if the prosecution were under a single indictment, information, complaint or uniform citation."

Moreover, RCr 9.16 requires separate trials if it appears that the defendant or the Commonwealth would be prejudiced by the joinder of the offenses.

To begin with, it is clear that the trial court has broad discretion in determining this issue and that an appellate court will

overturn a decision under a joinder "only upon a showing of a clear abuse of discretion and prejudice to the defendant." *Seay v. Commonwealth*, Ky., 609 S.W.2d 128, 131 (1981).

██ In the case before us, all charged offenses against the appellant occurred in one week's time. The offenses arising from the two events are similar, each including kidnapping, sodomy and rape. In the first episode, August 7, 1986, appellant used deception to get C.D. in his truck. On August 13, 1986, he used an identical deception to get D.C. and A.N. into his vehicle. In both instances, he picked the women up at a public eating and drinking establishment. Moreover, and it is not necessary to describe the details here, the sexual assaults allegedly performed by appellant were the same. Finally, the sexual assaults were committed following compulsion—a knife to the neck or a gun to the temple.

It is clear that the crimes were very close in time, were instigated by the same deceptive techniques, involved threatened force and were similar in nature. Under these circumstances, we find no prejudice to the defendant, and no abuse of discretion by the trial court. We, therefore, affirm on this issue.

This case is reversed with directions to the trial court that in the event of a retrial, under the same evidence, that the instruction on insanity will be given to the jury, as well as an instruction on unlawful imprisonment in the second degree.

COMBS, LAMBERT, and LEIBSON, JJ., concur.

VANCE, J., dissents in a separate dissenting opinion in which GANT, J., joins.

WINTERSHEIMER, J., dissents in a separate dissenting opinion.

VANCE, Justice, dissenting.

I respectfully dissent. When a defendant in a criminal case relies upon the defense of insanity the burden of proof rests with him. The issue is not submissible to the jury unless he presents evidence from which a jury can draw an inference that it is reasonably probable that he was insane when the crime was committed. This requires proof that it is more likely than not that he was insane. The testimony of a psychiatrist that it is more likely than not that he would have great difficulty in conforming his conduct to the requirements of law does not meet that standard. I do not find any other evidence that it was more likely than not that the appellant was insane at the time of the commission of the crime. Consequently, I do not feel that the trial judge erred by denying the requested instruction on insanity.

GANT, J., joins in this dissent.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the request for instructions on the insanity defense and the request for an instruction on unlawful imprisonment were both properly refused.

The trial judge correctly refused the defendant's request for an instruction on the defense of insanity. First I must observe that the argument by Cannon is not properly preserved for appellate review. He argues on appeal that the language "reasonable medical certainty" was the incorrect standard. However, defense counsel did not object to it at the time, nor did he raise the issue when he later made his motion for an insanity instruction. It was the defense counsel who first presented this standard to the court. The defense cannot now benefit when the trial judge merely repeated the standard presented by the defense. Cannon should have made some effort to correct the alleged error he now complains of. The trial judge did not have the opportunity to rule on the issue of the correctness of the language "reasonable medical certainty." RCr 9.22; *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1976). Cannon cannot now complain.

In any event the trial judge did not abuse his discretion in refusing to allow the instruction on insanity. The majority asserts that a "silver thread" runs through previ-

ous decisions of this Court that "any evidence of insanity" demands an instruction. I disagree because I believe that there must be *sufficient competent* evidence of insanity before the defendant is entitled to the instruction. Here the proof was lacking.

This Court has previously held that not only must a mental defect be shown, but also there must be evidence from which a jury might reasonably conclude that as a result the defendant was substantially unable to understand that he was violating the law. *Henderson v. Commonwealth*, Ky., 507 S.W.2d 454 (1974) at 459. In this case, Cannon called a psychiatrist who testified that the defendant suffered from organic mental disorder associated with chronic heavy alcohol and amphetamine dependence. The expert stated that Cannon did not know right from wrong. The trial judge specifically questioned the doctor as to whether he could state with a reasonable degree of medical certainty that Cannon did not have substantial capacity to appreciate the criminal nature of his conduct, or if he did have such capacity, he did not have capacity to conform his conduct to the law. The psychiatrist answered "No, I can't." All the doctor could say was that there was a 50/50 chance that the defendant did not have the required capacity. The psychiatrist repeated his testimony on redirect examination that the defendant was unable to distinguish right from wrong. The court asked the doctor if the defendant failed to meet the requirements on the two dates in question and again the physican answered that he could not say with medical certainty that Cannon met the standards for insanity. It is clear that the proof was insufficient to warrant an instruction on the defense of insanity.

The trial judge correctly refused the defendant's request for a second-degree unlawful imprisonment instruction because the evidence did not support the giving of such an instruction. The kidnapping instruction was properly based on the evidence. An instruction on a lesser-included offense should be given only when it is justified by the evidence. *Martin v. Commonwealth*, Ky., 571 S.W.2d 613 (1978);

*Isaacs v. Commonwealth*, Ky., 553 S.W.2d 843 (1977). The evidence must create a reasonable doubt as to whether the defendant is guilty of the higher or lower degree in order to allow giving a lesser-included instruction. *Tipton v. Commonwealth*, Ky., 640 S.W.2d 818 (1982). Here the evidence did not establish a reasonable doubt as to whether the defendant was guilty of kidnapping or unlawful restraint. The evidence clearly indicates that the defendant's intent was to restrain one of the women to accomplish or advance the commission of attempted murder or to inflict bodily injury or to terrorize the woman. The evidence does not support the giving of an instruction on unlawful restraint. If the evidence indicates that the accused is guilty of only one offense, it is not necessary or proper to give instructions on lesser-included offenses. *Cox v. Commonwealth*, 491 S.W.2d 834, cert. den. 414 U.S. 862, 94 S.Ct. 81, 38 L.Ed.2d 112 (1973).

I would affirm the conviction in all respects.