'COMMONWEALTH of Kentucky, Appellant,

v.

Kevin Raymond BLACK, Appellee.

No. 94–SC–287–CL.

Supreme Court of Kentucky.

Oct. 19, 1995.

Chris Gorman, Attorney General, Frankfort, C. Lloyd Vest II, Special Assistant Attorney General, Louisville, Elizabeth Heilman, Assistant Commonwealth Attorney, Louisville, for Appellant.

Russell J. Baldani, Baldani, Rowland & Richardson, Lexington, for Appellee.

Certification of the Law by Chief Justice STEPHENS.

Pursuant to CR 76.37(10) the Commonwealth requested that this Court certify the law in order to determine whether the trial court properly directed a verdict on the grounds that the conviction of the lesser included charge would merge into the conviction of the more serious offense at the same trial.

Appellant was indicted on charges of Wanton Endangerment (KRS 508.060) and Terroristic Threatening (KRS 508.080). The charges stem from an incident on July 1, 1993. That evening appellant was sitting in his car, parked in the parking lot of Service Merchandise. Also present in the parking lot were three undercover police officers, Detective Mahaffey and two others. They were waiting for additional money to be delivered in connection with their undercover activities. Approximately 30 minutes after appellant arrived in the parking lot, Detective Mahaffey walked toward appellant's car on his way to the MacDonald's next door. Detective Mahaffey testified that initially the appellant verbally threatened him, then appellant removed a tire iron from his trunk and threatened him physically. Appellant testified that he was apprehensive about the man walking across the dark parking lot toward his car. When the detective came closer appellant got out of his car and asked what the detective wanted. Appellant then testified that Detective Mahaffey reached into his pocket which caused appellant to believe he was reaching for a weapon. At this time appellant reached into his trunk for the tire iron. Appellant denied swinging the iron at Detective Mahaffey. When the other officers identified

themselves, appellant immediately surrendered. Appellant was arrested at this time. Subsequently, appellant was indicted on one count of First Degree Wanton Endangerment and one count of Terroristic Threatening.

Appellant's trial began on March 1, 1994. At the conclusion of the Commonwealth's case, appellant moved for a directed verdict of acquittal on the Wanton Endangerment charge. This motion was denied. At the conclusion of all evidence, appellant moved for a directed verdict of acquittal on both the Wanton Endangerment and the Terroristic Threatening charges. The trial court judge granted a directed verdict on the Terroristic Threatening charge. The trial judge based the decision upon the idea that the lesser charge merged into the greater offense and that double jeopardy principles required a directed verdict on one of the charges. We believe this was in error. Both charges should have gone to the jury. The jury should have been instructed on First Degree Wanton Endangerment and, in the alternative, Terroristic Threatening as a lesser included offense.

It is well settled that Terroristic Threatening is a lesser included offense of Wanton Endangerment. *Watson v. Commonwealth*, Ky., 579 S.W.2d 103 (1979). Further, a defendant cannot be convicted of both charges when they concern the same victim, as in this case. *Id.* A defendant is entitled to an instruction on a lesser included offense when "a reasonable juror could entertain reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Skinner v. Commonwealth*, Ky., 864 S.W.2d 290, 298 (1993).

In this case it would be reasonable for a juror to believe that appellant verbally, but not physically, threatened the detective. Consequently, it would be "reasonable" to have a "reasonable doubt" as to whether appellant committed first degree Wanton Endangerment and still find him guilty of the lesser charge of terroristic threatening. Appellant was therefore entitled to the instruction on Terroristic Threatening as a lesser included charge of Wanton Endangerment.

The proper procedure in this instance is for the trial judge to send both the Wanton Endangerment and the Terroristic Threatening charges to the jury with the proper instructions. When instructing on lesser and greater charges the instructions usually begin with the refrain "[i]f you do not find the defendant guilty under" another instruction then you may find the defendant guilty under this instruction. *See,* 1 COOPER KENTUCKY INSTRUCTIONS TO JURIES (Criminal). When given proper instructions, it is clear to the jury that the defendant cannot be convicted of more than one of the proffered charges. It is therefore unnecessary for this court to reach the double jeopardy issue raised by the Commonwealth.

FUQUA, LAMBERT, LEIBSON, REYNOLDS and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents in a separate dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the Majority Opinion because the specific question presented here is when is the proper time to resolve a claim that convictions under multi-charges would violate the double jeopardy principles. I believe this question should be answered directly.

The Commonwealth requested that this Court certify the law in order to determine whether a trial court may properly direct a verdict on the grounds that a conviction of one charge would merge into a conviction of another charge at the same trial. KRS 505.020 does not offend the Double Jeopardy clause of the Kentucky Constitution or the United States Constitution. The statute provides that a defendant may be prosecuted for each offense when during a single course of conduct, the actions establish the commission of more than one offense.

Black was indicted for the charges of Wanton Endangerment in violation of KRS 508.060 and Terroristic Threatening in violation of KRS 508.080. The charges stem from a single incident involving an undercover police officer. The officer was walking past Black's vehicle which was parked in a lot.

The officer testified that Black verbally threatened him. He also testified that Black got out of his car, removed a tire iron from the trunk and moved toward the officer and while yelling threats, swung the tire iron in the direction of the officer. Two other undercover officers at the scene ran toward Black with weapons drawn and identified themselves as police officers. Black dropped the tire iron and was arrested. The other two officers confirmed the testimony except they were not close enough to actually hear any of the threatening remarks. Black's version was that as the undercover officer approached the car, he reached into his pocket. Black believed the man was going for a weapon and so he retrieved a tire iron from his trunk in order to protect himself. He claims he held the tire iron at his side so that the approaching man could see it but that he did not make any verbal threats or movements.

Black moved for directed verdicts of acquittal on both charges. The motion in regards to the charge of Wanton Endangerment was denied but the trial judge granted a directed verdict on the charge of Terroristic Threatening. The judge agreed with the Commonwealth that "the basic elements of Terroristic Threatening are there" but relied on principles of double jeopardy to rule that the Terroristic Threatening charge merged into the charge of Wanton Endangerment. The jury was instructed on First Degree Wanton Endangerment, the lesser. included offense of Second Degree Wanton Endangerment and the lesser included offense of Menacing. After the jury had deliberated for two hours they sent out a question, "What happened to the charge of Terroristic Threatening?" The trial judge wrote back, "You are not to consider the charge of Terroristic Threatening." Twelve minutes later the jury returned with Not Guilty verdicts on the three charges submitted to it. The trial judge invited the Commonwealth to certify the question to a higher court for review.

The proper time to resolve a claim that convictions under multiple counts of an indictment would violate the double jeopardy clause is between the jury verdict and the formal sentencing. The Supreme Court ruled in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), that a defendant may be prosecuted in a single trial for violations of two statutes for actions involving the same instrument. The court determined that the accused may not suffer two convictions or sentences and that if the jury returns guilty verdicts for each count, the judge should enter judgment on only one of the statutory offenses. Legislators, and not courts, define the scope of punishment. The punishment appropriate for the various offenses is a matter solely for the discretion of the legislature. *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). The courts may not increase or decrease the punishment range fixed for the various offenses. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

In regard to the question of cumulative sentences imposed in a single trial, the double jeopardy clause does no more than prevent the sentencing court from ordering greater punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Double jeopardy protection is a limitation on the sentencing power of the court which is specifically designed to make sure that the punishment imposed by the court does not exceed the punishment authorized by the legislature.

The procedure described in *Ball, supra,* is consistent with Kentucky's application of double jeopardy to multiple punishments in a single trial. KRS 505.020(1) provides in pertinent part that when a single course of conduct of a defendant may establish the commission of more than one offense, he may be prosecuted for such offense. In certain circumstances, such an accused cannot be convicted of more than one offense.

*Jordan v. Commonwealth*, Ky., 703 S.W.2d 870 (1986), observes that the appropriate relief for a violation of this kind of double jeopardy protection is to set aside the conviction for the lesser-included offense. *Cf. Watson v. Commonwealth*, Ky., 579 S.W.2d 103 (1979). *Carter v. Commonwealth*, Ky., 782 S.W.2d 597 (1990), holds that applicable double jeopardy principles do not preclude a conviction for both offenses, only punishment for both. These are the same principles

found in the procedure outlined in *Ball, supra.* Neither the Federal nor State Constitutions prohibit more than one jury verdict on the same offense but they prohibit judgment imposing multiple punishment for an action or course of conduct that is legally a single crime. The procedure adopted in *Ball* fully protects the legitimate interests of both the accused and the government without giving undue advantage to either.

Any reliance on *Commonwealth v. Varney,* Ky., 690 S.W.2d 758 (1985) is misplaced. The holding in that case was that where a defendant was originally charged with robbery and assault and the jury was instructed only on the assault charge but could not reach a verdict, double jeopardy principles did not bar the retrial of the defendant on the robbery charge. The opinion recognized that no one objected to the instruction at the first trial. The holding was based on double jeopardy principles rather than the appropriate instructions to be given in such a circumstance.

The discussion in *Varney* about the instructions in the first trial was dicta. I believe *Varney* supports the proposition that under KRS 505.020(2) a defendant may be convicted of an offense that is included in any offense with which he is charged. The trial judge is required to instruct the jury on lesser included offenses when it is so requested and is justified by the evidence. *Wombles v. Commonwealth,* Ky., 831 S.W.2d 172 (1992). This is true even if the defendant objects to the giving of the instructions. *Cannon v. Commonwealth,* Ky., 777 S.W.2d 591 (1989). *Varney* offers no relief in this type of situation. The argument by Black's counsel that a dismissal at the directed verdict stage is appropriate to avoid a so-called compromise verdict by the juror is unconvincing. This argument is similar to that rejected in *Cannon, supra,* and *Smith v. Commonwealth,* Ky., 737 S.W.2d 683 (1987).

Reliance on *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) is also misplaced. In the first trial of *Price,* there had been a finding that there was insufficient evidence of guilt as to murder. Here there is no basis for injecting the compromise verdict theory because the trial judge acknowledged that there was sufficient evidence to support a jury finding of guilt on either or both of the charges. There can be no compromise verdict under the *Ball* procedure because there must be a finding that sufficient evidence was presented to support any or all of the charges before the jury can consider a specific charge.

The principle of double jeopardy prevented the conviction for both Wanton Endangerment and Terroristic Threatening when a single act was directed against the same person. *Watson v. Commonwealth, supra.* The law does not foreclose prosecution for multiple offenses in a single trial "but only judgments imposing multiple punishments meaning that the judgment punishing on the lesser charge should be set aside." *Walden v. Commonwealth,* Ky., 805 S.W.2d 102 (1991).

The Double Jeopardy clause "protects against multiple punishments for the same offense." *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). There is no question that Black could only be punished for one crime arising from this same incident and course of conduct directed against a single person. *Cf. Blockberger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

The trial judge acted prematurely when he granted a directed verdict of acquittal on one charge because he thought the charge would merge into a potential conviction for another charge. The correct point in time to perform the double jeopardy analysis is after the verdicts have been returned by the jury and not prior to the submission of instructions to that jury.

The proper course of action would be to submit all charges to the jury which are sufficiently supported by the evidence to withstand a separate motion for a directed verdict. *Cf. Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991). The jury is then given the opportunity to weigh the evidence and perform its function of determination of guilt. It is only if guilty is determined under both charges that a question of double jeopardy becomes ripe. At that time, the trial judge is able to conduct a double jeopardy analysis. If he determines that a violation

would occur if sentences for two charges are imposed, he may utilize his discretion and protect the defendant's rights by only issuing an order of conviction for one of the charges or vacating the order of conviction for the lesser offense. This exact course of action is described in *Ball, supra.*

Pursuant to the *Ball* procedure, the defendant is protected by requiring the trial court to consider the factual sufficiency of each charge, under *Commonwealth v. Benham, supra,* before allowing the charges to be submitted to the jury. The interest of the Commonwealth is protected by submitting each factually sufficient charge to the jury for a finding of guilt or innocence. If the jury returns a guilty verdict on more than one count, the double jeopardy protection against multiple punishments is insured by the application of a double jeopardy analysis in the time between the jury verdict and the sentencing. Here the trial judge, confused about this balance, gave an unwarranted advantage to the defendant. The trial judge applied the double jeopardy analysis at the directed verdict stage, before the jury had any opportunity to consider the charges. Where there is sufficient proof, a defendant has no right to prevent the jury from considering the charges brought at trial in the absence of a valid directed verdict analysis.

If the evidence on a particular charge is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, that charge should be submitted to the jury for its decision. The double jeopardy protection afforded a defendant against multiple punishment does not become ripe unless the jury finds guilt on more than one charge. There is always a possibility that the jury will find a defendant guilty of only one charge or will find the defendant not guilty on all charges. Consequently there can be no double jeopardy analysis in such a situation. Here the trial judge prematurely directed a verdict so as to remove a particular charge from the consideration of the jury and prevented the jury from making a finding of fact. The United States Supreme Court has previously rejected the action taken by the trial judge in this situation where the defendant would have

obtained a premature ruling on his potential double jeopardy claim. *See Ohio v. Johnson, supra.* The federal precedents are persuasive to us and should be applied in Kentucky. Adoption of the *Ball* procedure will prevent similar unnecessary prejudice to the Commonwealth in future cases.

This certification relates to when a double jeopardy analysis is to be applied and not how it is to be applied. The appropriate time to resolve a claim that convictions under multiple charges of an indictment would violate the double jeopardy clause is between the jury verdict and formal sentencing.