# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



**Supreme Court of Kentucky**

2016-SC-000647-MR

TIMOTHY NUTGRASS          APPELLANT

ON APPEAL FROM ANDERSON CIRCUIT COURT
V.      HONORABLE CHARLES R. HICKMAN, JUDGE
NO. 14-CR-00035

COMMONWEALTH OF KENTUCKY          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

An Anderson Circuit Court jury convicted Appellant, Timothy Clifton Nutgrass, of two counts of attempted first-degree manslaughter and four counts of first-degree wanton endangerment. In accordance with the jury's recommendation, the trial court sentenced Nutgrass to twenty years' imprisonment. He now appeals as a matter of right, Ky. Const. § 110(2)(b), alleging that the trial court erred by (1) failing to instruct the jury on lesser-included offenses and (2) failing to instruct the jury on the affirmative defenses of voluntary intoxication and insanity. For the following reasons, we affirm.

## I. BACKGROUND

On March 17, 2014, Nutgrass engaged in a verbal dispute with his sister and brother-in-law. After the disagreement, he went home where he drank vodka soda and took pain pills for his back and three over-the-counter diet pills. He became frightened that his sister and brother-in-law would file an

Emergency Protective Order (EPO) against him due to the verbal dispute. He was primarily concerned with the impact an EPO would have on his license to carry concealed weapons. Nutgrass placed the first of several phone calls to Lawrenceburg 911 dispatch and requested to speak with Anderson County Police Officer Alan Robinson.

Nutgrass had become acquainted with Robinson when the officer assisted him with prior matters. However, the dispatcher informed Nutgrass that Robinson had the day off and transferred his call to Kentucky State Police Trooper Matthew Rogers. Rogers advised Nutgrass to contact the county attorney to document the harassment by his sister, and to pursue an EPO against his sister and brother-in-law. Nutgrass again requested to speak to Robinson and hung up when Rogers informed him Robinson was off duty.

In a subsequent 911 call, Nutgrass told Lawrenceburg dispatch that he was going to "start shooting at people if [police officers] don't get down there." Rogers was dispatched to Nutgrass's trailer following this call. Rogers and Anderson County Sheriff's Deputy Loren Wells were the first uniformed officers to respond. Upon the officers' arrival at the trailer, Nutgrass was standing on his porch with a handgun pointed at Rogers's cruiser.

After seeing Nutgrass with the firearm, the officers backed up approximately 200 yards on the roadway. Nutgrass then began shooting at Rogers and Wells. Rogers got into Wells's cruiser, after which the officers retreated to a location approximately 400 yards from Nutgrass's trailer. This

2

was the location at which other officers arriving on the scene joined Rogers and Wells.

During the standoff, Nutgrass logged several more calls to 911. In these phone calls, Nutgrass claimed that he could hold the officers down for 48 hours. Nutgrass was finally apprehended when he attempted to drive away from the trailer and crashed his car into a police cruiser.

Nutgrass was charged with eight counts of attempted murder for firing shots at police officers, with two of the counts dismissed without prejudice before trial. At trial, the circuit court instructed the jury as to six counts of attempted murder and the lesser-included offenses of attempted first-degree manslaughter and first-degree wanton endangerment.

Ultimately, the jury found Nutgrass guilty of two counts of attempted manslaughter (for shooting at Rogers and Wells who were originally in closer proximity) and four counts of first-degree wanton endangerment (for shooting at four other officers who were farther away). The trial court adopted the jury's recommendations and sentenced Nutgrass to twenty years' imprisonment. We now affirm.

## II. ANALYSIS

Nutgrass argues that the trial court erred by failing to instruct on lesser-included offenses and affirmative defenses. Specifically, he argues that he was entitled to jury instructions on third-degree assault and second-degree wanton endangerment as lesser-included offenses of attempted murder. He further

contends that the trial court erred by failing to instruct the jury on the affirmative defenses of voluntary intoxication and insanity.

## A. Lesser-included Offenses

Nutgrass first argues the trial court should have instructed the jury on the lesser-included offenses of third-degree assault and second-degree wanton endangerment. Nutgrass preserved this issue for appeal by tendering jury instructions for third-degree assault and second-degree wanton endangerment. *See* RCr 9.54; *Elery v. Commonwealth*, 368 S.W.3d 78, 89 (Ky. 2012).

Nutgrass was tried on six counts of attempted murder. The trial court instructed the jury on the lesser-included offenses of attempted manslaughter and first-degree wanton endangerment, but rejected Nutgrass's tendered jury instructions for the lesser-included offenses of third-degree assault and second-degree wanton endangerment. The jury found Nutgrass guilty of the attempted manslaughter of Wells and Rogers and guilty of first-degree wanton endangerment as to the four remaining police officers.

This Court reviews a trial court's refusal to give a lesser-included offense instruction under the 'reasonable juror' standard set out in *Allen v. Commonwealth*:

> [W]e review a trial court's decision not to give a criminal offense jury instruction under the same "reasonable juror" standard we apply to the review of its decision to give such an instruction. *See Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991). Construing the evidence favorably to the proponent of the instruction, we ask whether the evidence would permit a reasonable juror to make the finding the instruction authorizes. We typically do not characterize our review under this standard as either *de novo* or for abuse of discretion . . . . In this context, the

4

> characterization makes little difference and so the inconsistency is more apparent than real. . . . Regardless of the characterization, however, the "reasonable juror" is the operative standard, in the appellate court as well as in the trial court.

338 S.W.3d 252, 255 (Ky. 2011). Therefore, we construe the evidence most favorably to the proponent of the instruction and "ask whether the evidence would permit a reasonable juror to make the finding the instruction authorizes." *Id.*

The trial court has the duty in a criminal case "to prepare and give instructions on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999). However, "[a]n instruction on a lesser-included offense is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Skinner v. Commonwealth*, 864 S.W.2d 290, 298 (Ky. 1993).

We will first address Nutgrass's argument regarding an instruction for third-degree assault. Nutgrass acknowledges that third-degree assault is not a lesser-included offense of attempted murder based upon a strict statutory approach. However, he argues that this Court rejected such an approach in *Hall v. Commonwealth*, 337 S.W.3d 595, 609 (Ky. 2011). This distinction is immaterial to our analysis, as we hold that "the evidence would [not] permit a reasonable juror to make the finding the instruction authorizes."

We will turn to the third-degree assault statute at issue. KRS 508.025 states:

(1) A person is guilty of assault in the third degree when the actor:

(a) Recklessly, with a deadly weapon or dangerous instrument, or intentionally causes or attempts to cause *physical injury* to:

1. A state, county, city, or federal peace officer . . . .

(Emphasis added).

No evidence was presented at trial that Nutgrass's conduct was an attempt to cause a mere physical injury. Rather, no reasonable juror could believe that by aiming and discharging a pistol at the police officers that Nutgrass attempted to cause anything less than their death or serious physical injury. "The problem with [Nutgrass's] contention is that his conduct 'so clearly posed a grave risk' of killing [or seriously injuring] someone . . . 'and so clearly manifested [his] extreme indifference to that possibility that a reasonable juror could not find that [Nutgrass] engaged in that conduct without also finding that he was guilty' of attempted murder, attempted manslaughter, or first-degree wanton endangerment." *Gonzalez v. Commonwealth*, No. 2011-SC-000466-MR, 2013 WL 1188020, at *12 (Ky. Mar. 21, 2013) (quoting *Allen*, 338 S.W.3d at 257).

Further, Nutgrass argues that had the third-degree assault jury instruction been given, the jury could have found that his actions were the result of reckless conduct rather than intentional. However, the evidence presented reflects that Nutgrass aimed his pistol at the police officers and

6

made statements to the 911 operator that "he could hold the officers down for 48 hours." Nutgrass contends his testimony that he did not realize the officers were in the line of fire mirrors the definition of recklessly. We are not persuaded by this argument. KRS 501.020(4) defines the mental state of recklessly as:

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

No evidence was presented to support the argument that Nutgrass failed to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. To reiterate the facts, Nutgrass called dispatch, stated he would start shooting if officers did not come to his home, and when the officers arrived he had a pistol aimed at the officers and shortly after began to fire in their direction. Thus, it cannot be said that Nutgrass's conduct was reckless.

Therefore, we hold that the trial court did not err in denying the proposed jury instruction on third-degree assault as a lesser-included offense of the greater charge, attempted murder. The evidence simply would not "permit a reasonable juror to make the finding the instruction authorizes." *Allen*, 338 S.W.3d at 255.

We will now turn to the tendered second-degree wanton endangerment jury instruction. Nutgrass insists that the trial court committed reversible

error by failing to give an instruction on second-degree wanton endangerment as a lesser-included offense of attempted murder. In support thereof, he relies upon the fact that many of the officers were not within close range of his shots and did not sense bullets whizzing by.

We will begin by examining the relevant wanton endangerment statutes. KRS 508.060 states: "A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.070 states: "A person is guilty of wanton endangerment in the second degree when he wantonly engages in conduct which creates a substantial danger of physical injury to another person."

This Court held in *Combs v. Commonwealth*:

> There are thus two differences in the degrees of wanton endangerment. The higher degree requires that the conduct be wanton under circumstances manifesting an extreme indifference to the value of human life while the lower degree requires only that the conduct be wanton. The higher degree requires conduct which creates a substantial danger of death or serious physical injury while the lower degree is satisfied by conduct which only creates a substantial danger of physical injury.

652 S.W.2d 859, 860–61 (Ky. 1983).

*Combs* further held:

> Our cases have now established that an instruction on a lesser included offense is not required unless the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged but yet conclude that he is guilty of a lesser included offense. Applying this standard to the evidence of this case, we hold that a reasonable juror could not doubt that Combs acted wantonly under circumstances which manifested an extreme

8

indifference to the value of human life and, likewise, a reasonable juror could not doubt that his conduct created a substantial danger of death or serious physical injury to another person. It was not error, therefore, to refuse to give the instruction on second degree wanton endangerment.

*Id.* at 861; (other citations omitted).

Applying *Combs* and the reasonable juror standard set forth in *Allen*, 338 S.W.3d at 255, to the evidence of the case at hand, a reasonable juror could not doubt that Nutgrass acted wantonly under circumstances which manifested an extreme indifference to human life. By shooting in the direction of police officers, Nutgrass's conduct created a substantial danger of death or serious physical injury. Here, the evidence would not "permit a reasonable juror to make the finding the instruction authorizes." *Id.* Thus a second-degree wanton endangerment instruction is not appropriate. Therefore, the trial court did not err by rejecting the proposed jury instruction of second-degree wanton endangerment.

In conclusion, the proposed jury instructions of the lesser-included offenses, third-degree assault and second-degree wanton endangerment, were not required. As discussed above, applying the reasonable juror standard set out in *Allen*, 338 S.W.3d at 255, the evidence would not "permit a reasonable juror to make the finding the instruction authorizes." *Id.* Specifically, a reasonable juror could not doubt that Nutgrass's conduct created a substantial danger of death or serious physical injury to the police officers as opposed to the mere physical injury required by the statutes of third-degree assault and second-degree wanton endangerment.

9

## B. Affirmative Defenses

Nutgrass next argues the trial court erred in failing to instruct the jury as to the affirmative defenses of voluntary intoxication and insanity. This Court held in *Conyers v. Commonwealth*:

> [A] trial court is required to instruct the jury on affirmative defenses if the evidence would permit a juror reasonably to conclude that the defense exists. *Fredline v. Commonwealth*, 241 S.W.3d 793 (Ky. 2007); *Nichols v. Commonwealth*, 142 S.W.3d 683 (Ky. 2004). On the other hand, such an instruction is to be rejected if the evidence does not warrant it. *Payne v. Commonwealth*, 656 S.W.2d 719 (Ky. 1983). The trial court made the latter determination in this case, and we review that decision for an abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d at 202-04.

530 S.W.3d 413, 431 (Ky. 2017). The same analysis and further review applies here, as the trial court rejected Nutgrass's proposed jury instructions regarding affirmative defenses.

### 1. Voluntary Intoxication

Nutgrass argues that he provided sufficient evidence and was entitled to a jury instruction on voluntary intoxication. His argument is based on the fact that he had taken pain medicine and diet pills in combination with alcohol before he called Lawrenceburg dispatch and the jury could have believed he was impaired during his stand-off with the police.

"In order to justify an instruction on intoxication, there must be evidence not only that the defendant was drunk, but that she was so drunk that she did not know what she was doing." *Springer v. Commonwealth*, 998 S.W.2d 439, 451 (Ky. 1999); (other citations omitted).

KRS 501.080 states:

10

Intoxication is a defense to a criminal charge only if such condition either:

    (1) Negatives the existence of an element of the offense; or

    (2) Is not voluntarily produced and deprives the defendant of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

We disagree with Nutgrass's argument that he was entitled to voluntary intoxication jury instructions. Here, there was no evidence that Nutgrass was intoxicated to the extent that said intoxication negated the element of intent with respect to shooting at the police officers.

Nutgrass contacted Lawrenceburg dispatch with what he asserted were preventative efforts to keep his license to carry concealed deadly weapons. He stated that he was going to start shooting people if police officers did not come to his residence. Although he was behaving irrationally and had flawed reasoning behind contacting dispatch, he was not so intoxicated that he could not comprehend that the police officers arrived at his residence and that he intentionally put them in the line of fire.

### 2. Insanity

We also disagree with Nutgrass that he was entitled to an instruction on insanity as an affirmative defense. He argues that there was sufficient evidence, such as Robinson's testimony, to submit an insanity instruction to the jury.

Here, Robinson was asked if Nutgrass was acting crazy to which he answered "in a state, yes." Further, Robinson testified that Nutgrass was "not

11

a really smart guy" and that he had a history of this kind of behavior. Nutgrass argues that this evidence, the testimony of a lay witness, was sufficient to entitle him to an instruction on insanity.

While this Court has allowed lay witness testimony in favor of the insanity defense, as Nutgrass's brief argues, that lay witness testimony has been paired with the testimony of an expert witness. For example, in *Brown v. Commonwealth*, 934 S.W.2d 242, 248 (Ky. 1996), this Court allowed certain lay witness testimony to reflect the appellant's sanity; however, this testimony was paired with the testimony of a mental health professional—a psychologist. Here, Nutgrass did not offer the testimony of an expert witness. Therefore, there was not adequate evidence presented to support the proposed affirmative defense of insanity.

In fact, the only testimony offered to reflect Nutgrass's mental state was Robinson's response of "in a state, yes" to the question of if Nutgrass was acting crazy at the time of the standoff. Such a question and answer response does not fall within the definition of insanity under KRS 504.060(5).

Pursuant to KRS 504.060(5), in order to be entitled to an insanity defense, one must, "as a result of mental condition, lack ... substantial capacity either to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law."

We disagree with Nutgrass's argument that the supporting evidence (the testimony of Robinson) was sufficient to entitle him to an insanity instruction. "The supporting evidence presented . . . was not sufficient, when taken as a

12

whole, for the jury to be given an insanity instruction." *Lickliter v. Commonwealth*, 142 S.W.3d 65, 68 (Ky. 2004). Additionally, Nutgrass presented no evidence of mental illness. Said evidence is required under KRS 501.060(5) in order for one to be entitled to an insanity instruction.

The facts in the case at hand are consistent with the ruling in *Lickliter* where this Court held "[t]here was no possibility that the jury could infer a 'reasonable probability' that the condition of insanity existed." *Id.* at 68 (citations omitted). In that case, this Court held that the appellant was not entitled to an instruction on insanity as there was evidence that the appellant abused illegal drugs, but there was no evidence that the appellant suffered from mental illness. *Id.*

*Lickliter* is similar to the case at hand, as there is testimony that puts Nutgrass's mental state into question. However, this supporting evidence is insufficient for the jury to be given an insanity instruction. As the record reflects no evidence that Nutgrass suffers from insanity pursuant to KRS 504.060(5), the trial court properly rejected the proposed insanity jury instruction.

Nutgrass cites to the holding in *Cannon v. Commonwealth*, 777 S.W.2d 591, 595 (Ky. 1989), in support of his argument. There, we stated:

> [a] silver thread that runs through our precedents on the question of insanity is that, if there is any evidence of insanity, even that of lay witnesses, the jury, under instructions, is the final arbiter of the ultimate question of the defendant's sanity (or insanity).

13

*Id.* Here, the testimony offered did not provide any evidence of insanity as the most the testimony reflects is that Nutgrass was "acting crazy" which does not fall within the definition of insanity. In *Cannon,* we went on to hold:

> If there is any probative evidence from which a jury could reasonably infer that at the time of the offense, as a result of mental disease or defect, the defendant lacked substantial capacity to either appreciate the criminality of his act or to conform his conduct to the requirements of law, the defendant is entitled to an instruction on insanity.

*Id.* at 594. To be clear, the evidence that Nutgrass argues to support the requested insanity defense did not reflect that Nutgrass was suffering from a mental disease or defect. Therefore, the trial court did not err in denying the insanity defense instruction Nutgrass requested.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate

Andrea Reed
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

William Robert Long Jr.
Assistant Attorney General

Bryan Darwin Morrow
Assistant Attorney General