Charlotte Louise EDWARDS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

July 29, 1977.

Aubrey Williams, Hancy Jones, III, Thomas L. Hogan, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

This appeal results from a judgment of conviction entered upon a jury verdict finding the defendant guilty of murder, KRS 507.020, and sentencing her to 20 years' imprisonment. Six errors warranting reversal of this conviction are alleged to have been committed by the trial court.

On the morning of January 17, 1976, Maj. Thomas B. Basehart, a United States Army officer stationed at Fort Knox, accompanied his wife and two daughters to the Oxmoor Shopping Center in Louisville for a day of shopping. Desiring to purchase a birthday present for one of the daughters, they visited Thornbury's toy store where Mrs. Basehart noticed the appellant, Charlotte Louise Edwards, standing in an aisle. Mrs. Basehart pardoned herself as she passed the appellant, who stepped aside. The Baseharts soon left the toy store and proceeded through the mall, stopping at various establishments along the way, and ultimately reaching a sporting goods store some distance from Thornbury's approximately 45 minutes later. As they left this shop, one of the children pointed out to Mrs. Basehart that the appellant, whom she remembered from the toy store, was then sitting outside the sporting goods store on a bench. The family decided to place the purchases they had accumulated that morning in their car before resuming shopping, and so proceeded toward the mall's parking lot. The appellant followed them outside, and exclaiming "you took my child away", fired some five or six shots at the Baseharts, one of these striking Major Basehart and killing him almost immediately. She then silently dropped her pistol into her purse and calmly walked toward her car. Her escape was prevented by the efforts of Mrs. Basehart and two witnesses to the incident who, after struggling with the appellant, were able to hold her until police arrived. Testimony presented at trial indicated no member of the Basehart family had ever had contact with the appellant prior to that day.

The appellant relied upon the defense of insanity at her trial, presenting lay and medical testimony indicating that she had undergone a psychological transformation following the dismissal of a charge of racial discrimination which she had filed against her employer in 1971, resulting in her exhibiting increasingly bizarre behavior since that time. Testimony presented on her behalf further indicated she had twice been committed to mental hospitals pursuant to mental detention warrants procured by her husband, that she had been released from one such hospital only six weeks prior to the incident in question, and that she had been diagnosed a paranoid schizophrenic by a psychiatrist in 1974. A clinical psychologist who interviewed the appellant three months after the crime also testified that, based on the tests administered on that occasion and the history obtained from her, the appellant was "grossly abnormal" on the day of the crime. The Commonwealth's lay and medical testimony in rebuttal of the appellant's proof of insanity indicated that the appellant's release from the mental hospital six weeks prior to the commission of the offense resulted from her being adjudged nondangerous to herself or others based on the testimony of two psychiatrists at a mental inquest hearing presided over by a judge of the Jefferson Circuit Court. Rebuttal testimony further indicated that during a 27-day period of psychiatric observation commencing approximately six weeks following the crime, no "overtly psychotic process" had been recognized, although the psychiatrists concerned indicated they felt the appellant to be then

suffering from some mental illness "in general gross terms." [1]

Appellant initially assigns as error the trial court's refusal to direct a verdict of not guilty by reason of insanity, contending she had proven herself insane by a preponderance of the evidence, had thereby shifted to the Commonwealth the burden of proving her sane, and that the Commonwealth had failed to sustain that burden. We disagree, however, not only because the burden of proving a defendant sane does not shift to the Commonwealth as suggested by the appellant's argument, but also because as we view the testimony presented herein, we feel it fails to relate the diminished mental capacity of the appellant perceived by the witnesses to the legal criteria for insanity established by KRS 504.020.

■ Where one chooses to rely upon insanity as a defense, the burden rests upon him to prove to the satisfaction of the jury that at the time the offense was committed, as a result of a mental disease or defect, he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. KRS 504.020; also see *Henderson v. Commonwealth*, Ky., 507 S.W.2d 454 (1974). Thus, the presentation of evidence merely proving the defendant to be suffering from some form of mental illness at the time of the offense, without also proving him unable to appreciate the wrongfulness of his conduct or to resist his impulse to commit the illegal deed due to the perceived mental disease or defect, will not relieve him from the consequences of his criminal act. *Newsome v. Commonwealth*, Ky., 366 S.W.2d 174, 177 (1962). After carefully reviewing the testimony presented herein, we conclude it persuasively indicates the appellant to be a woman laboring under a mental disorder of some kind when psychiatrically examined following the commission of the offense. However, we also feel it completely fails to show that on the morning of January 17, 1976, a mental disease or defect

had so reduced her mental state that she was unable either to appreciate the criminality of her acts or to resist the impulse to commit the crime. The evidence thus fails to establish the facts necessary for a defense of insanity, and no error can be recognized in the trial court's denial of a motion for a peremptory instruction. Although the foregoing discussion disposes of this allegation of error, we feel compelled to point out for the benefit of counsel that the introduction of proof of insanity by a defendant does not place a burden on the Commonwealth to prove him sane; rather, it entitles the defendant to an instruction to the jury that they may find him not guilty by reason of insanity, and thus properly makes the issue of insanity a matter for the jury's determination.

■ The appellant's second allegation of error concerns the trial court's refusal to offer to the jury her requested instruction that if they found her not guilty by reason of insanity, she would be admitted to an institution for treatment and care of her mental defect or disease until further order of the court. The argument advanced in support of this instruction is that although information regarding the post-verdict confinement of a criminal defendant has no theoretical bearing on the jury's verdict, it may have a practical bearing. Because the jury may be unaware that the defendant will be hospitalized if found not guilty by reason of insanity, the argument goes, it may decide for conviction even though it believes him not guilty by reason of insanity, because of a fear that the defendant will be returned to society while still insane. This being an issue never previously addressed by this court, we have consulted decisions of other states and have found the majority rule to be against the instruction. Annot., 11 A.L.R.3d 737 (1963). We decline this invitation to join the minority.

An instruction of the kind here requested has no legitimate bearing on the issue of fact to be decided by the jury when the

---

1. It should be noted, however, that the efforts of the psychiatric staff during this 27-day period were hindered significantly by the refusal of the appellant to allow herself to be psychiatrically examined in the absence of an attorney.

defense of insanity has been raised, that issue being whether the defendant was mentally responsible when the criminal act was done, and could, we feel, divert the jury's attention from the resolution of this issue. Moreover, the instruction as requested does not properly declare the law in this state regarding the disposition of a person acquitted of a charged offense because of a mental disease or defect. Although KRS 504.030 permits the prosecutor or the court to institute proceedings directed toward a mental examination and possible civil commitment of a defendant following an acquittal because of insanity, the dangerousness of the defendant to himself or others remains the criterion for determination of whether he should be committed. Thus, even though the jury has determined the defendant should not be held responsible for his criminal conduct because he was insane at the time the offense was committed, if at the time this verdict is returned there are no reasonable grounds for the court to believe the defendant will cause injury to himself or others if not immediately restrained, even the short-term, temporary commitment prescribed by KRS 504.030(2) cannot be ordered.

The appellant's final four allegations of error charge that she was denied due process of law under the state and federal constitutions when the trial court: (a) failed to comply with Rule 9.32 of the Kentucky Rules of Criminal Procedure in striking an alternate juror from the panel prior to the submission of the case to the jury; (b) limited the testimony of Dr. Donald Templer, a clinical psychologist called as an expert witness by the defense; (c) permitted the Commonwealth's Attorney to interrupt the appellant's direct examination of Dr. Arthur Daus, a neuropsychiatrist called as an expert by the defense, to question him in chambers as to his qualifications; and (d) permitted the Commonwealth's Attorney to make statements appealing to the racial prejudice and passions of the jury in his closing argument.

■ The appellant charges RCr 9.32 was violated because the slips of paper containing the names of the 13 jurors were not folded and were not placed in the box from which they were withdrawn in open court. Be that as it may, the record establishes that when the clerk withdrew the name of the excluded juror from the box, he raised its cover only enough to permit the entrance of his hand, and not enough to permit him to see inside. Although we do not understand why the procedure outlined by the rule was not strictly followed, since " . . . it clearly lays down a course of action . . . that can scarcely be misunderstood," *Gill v. Commonwealth*, Ky., 374 S.W.2d 848, 850 (1964), we do not consider this deviation from the prescribed procedure to be so serious as to require reversal of the appellant's conviction; nor do we view the circumstances as indicating it to have been, as appellant appears to be suggesting, part of a scheme to strike this particular juror. That the juror excused would have been more receptive to the appellant's evidence of insanity than those not stricken because of the confidence in psychiatrists and empathy for the mentally ill she had apparently expressed on voir dire is a matter of speculation into which we refuse to be drawn.

■ The second alleged denial of due process of law is said to have occurred when the trial court refused to allow Dr. Donald Templer to use terms such as "mentally ill" and "schizophrenic" in his testimony regarding the appellant's mental condition because, as a psychologist, he was not considered to hold a medical degree. In view of the doctor's testimony that he "could describe this woman's condition just as well" by using other terms, and the fact that he was permitted to testify as to the results of the psychological tests he had given the appellant, thereby presenting to the jury the same information without use of the terms objected to, we cannot perceive how the limitation placed upon his testimony deprived the jury of its full import. Being enjoined by RCr 9.24 and 9.26 to disregard any claimed error unless we are of the opinion it affected the "substantial rights" of the defendant, we thus must

also hold this error not to be of reversible magnitude.

The third denial of due process is argued to have occurred under the following circumstances: The appellant called Dr. Arthur Daus to testify on the issue of insanity and presented to him a series of questions intended to qualify him as an expert witness. At the conclusion of these questions, the Commonwealth's Attorney requested the opportunity to voir dire Dr. Daus on his qualifications, saying he had some questions the appellant had not gone into. The trial judge granted the request, and permitted the Commonwealth to then question Dr. Daus outside of the presence of the jury regarding whether he had staff privileges at local hospitals and whether he was certified by the American Board of Psychiatry and Neurology. At the conclusion of the prosecutor's questioning, the trial judge ruled the doctor could testify as an expert witness, subject to the right of cross-examination by the Commonwealth as to his credibility. The appellant objected to this ruling, stating it would be "grossly unfair, prejudicial, and blatantly disrespectful" to permit the Commonwealth to attack the credibility of the witness on cross-examination. Returning to the courtroom, the appellant refused to resume questioning Dr. Daus and rested her case. She now argues that the interruption of the appellant's direct examination of the witness to permit the Commonwealth to voir dire him as to his qualifications was improper, contending the proper time for such questioning would have been on cross-examination, following her direct examination of the witness. She further argues herself prejudiced by the trial court's ruling which would have permitted the Commonwealth to repeat its questions of the witness in the presence of the jury for the purpose of attacking his credibility on cross-examination, claiming this forced her to dismiss Dr. Daus as a witness "without benefit of his very critical testimony." We cannot agree.

■ The decision as to the qualification of witnesses as experts rests in the discretion of the trial court. *Ky. Power Co.* *v. Kilbourn*, Ky., 307 S.W.2d 9, 12 (1957). Here a question was raised as to the witness' expert qualifications which the trial court attempted to resolve prior to the witness' testimony. The manner in which this was done may be considered irregular, but we do not feel it was improper. If the Commonwealth had established in the course of its voir dire examination that the witness was not qualified to testify as an expert, the trial court's action would have prevented incompetent testimony from being presented to the jury. As for the contention that the court's ruling forced the appellant to dismiss her witness, it is our observation that the decision of whether to proceed with the testimony of Dr. Daus was a decision voluntarily made by appellant's counsel, apparently as a matter of trial strategy because it was felt it would be impossible to correct by redirect examination any damage done to the credibility of the witness on cross-examination. As such, it cannot be recognized as prejudicial error. Moreover, it is our further observation that the credibility of every witness presented to testify in a legal proceeding, including expert witnesses, is subject to attack and cross-examination, this being the primary means by which trial counsel can attempt to persuade jurors of the weight or significance to be attached to the testimony of the witnesses, and merely a risk to be considered by trial counsel when the witness is called to testify. We cannot conceive how such a basic matter in the conduct of a trial should warrant reversal of appellant's conviction here.

■ Appellant's final alleged error concerns statements made by the Commonwealth's Attorney which she argues were intended to appeal to the racial prejudice of the jury. After reviewing the statements in question, which amount to a reference to a possible racial motive for the appellant's crime, we feel them to constitute merely a fair inference on his part from the evidence given at trial, well within the reasonable latitude permitted him during closing argument. *Richards v. Commonwealth*, Ky., 517 S.W.2d 237, 242 (1975). We are thus not

convinced the argument of the Commonwealth's Attorney requires a reversal in this case.

The judgment is affirmed.

All concur.