**Albert C. EDMONDS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

July 3, 1979.

Jack E. Farley, Public Advocate, Kevin M. McNally, C. Thomas Hectus, Asst. Public Advocates, Com. Ky., Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., C. David Clauss, Asst. Atty. Gen., Com. Ky., Frankfort, for appellee.

STERNBERG, Justice.

The appellant, Albert C. Edmonds, was indicted on June 12, 1975, by the Grand Jury of Pike County, Kentucky, for the June 1, 1975, murder of Betty Renfro. KRS 507.020(1)(a). On August 29, 1975, the appellant filed notice of his intention to rely on the defense of insanity. KRS 504.050(1). On November 7, 1975, at the request and by agreement of counsel for appellant and the Commonwealth, the trial court ordered the appellant to undergo a medical and psychiatric examination by Dr. John Corcella to determine both his competency to stand trial and his condition at the time Betty Renfro was shot to death. On July 9, 1976, the appellant was ordered to the Pikeville Methodist Hospital for a neurological examination by Dr. R. H. Mortara. On September 17, 1976, the trial court, pursuant to the request of the Commonwealth, ordered appellant to submit to a follow-up psychiatric examination by Dr. Corcella, which was done. A six-day trial commencing December 15, 1976, resulted in a jury verdict finding the appellant guilty of murder and fixing his punishment at life imprisonment. Thus, this appeal.

The appellant charges that the trial court erred in the following instances:

I. The appellant was denied due process of law by the trial court's murder instruction which omitted an essential element of the offense and by the refusal to instruct on first degree manslaughter.

II. The trial court committed reversible error and denied the appellant's constitutional right to a fair trial by permitting the Commonwealth's Attorney to testify as a witness and to participate in the trial as the prosecutor.

III. The trial court committed reversible error and denied the appellant's constitutional right to a fair trial by permitting the Commonwealth to engage in improper conduct during trial and closing argument.

IV. The trial court erred and denied appellant due process of law in refusing to give a curative instruction on the consequences of a verdict of not guilty by

reason of insanity after an erroneous view of the law was given by the prosecutor.

V. The failure of the trial court to make a determination of competency and to issue findings of fact and conclusions of law and appellant's trial while incompetent denied him due process of law.

VI. The trial court committed reversible error and appellant was denied due process of law and a fair trial when he was tried, convicted and sentenced while incompetent.

VII. The trial court erred to appellant's substantial prejudice in refusing to admit certain of his V.A. medical records, and unduly depreciated his constitutional right to present a defense.

VIII. The trial court committed reversible error and denied appellant due process of law and his rights to present a defense and to confront the witnesses against him by improperly limiting defense questions.

IX. The trial court erred in refusing to suppress appellant's statement both because he was insane at the time of the statement, and because the Commonwealth's Attorney destroyed the tape recording of the statement.

X. The trial court committed reversible error and denied appellant due process of law by refusing to direct a verdict of acquittal.

XI. The trial court's instruction on reasonable doubt denied appellant due process of law.

XII. Appellant's judgment must be vacated because of the failure of the court below to follow the mandatory sentencing procedures of KRS 532.050 and because the trial court abused its discretion and denied appellant due process of law in refusing to order a presentence psychiatric examination as authorized by KRS 532.050(3).

The appellant was 55 years of age and a successful insurance salesman. He had been married for fourteen years and lived with his wife on Jay Street in Pikeville, Kentucky. Betty Renfro was a 23-year-old widow who, with her two children, lived in a house trailer in Ray's Trailer Court, Pikeville. Her brother, Danny Hardin, and his wife Debbie lived in the same trailer court. The appellant was infatuated with Betty and spent much of his time with her and her children. The children referred to him as "Dad," and he often took all of them out for entertainment. The appellant was jealous of Betty and on this fateful afternoon was laboring under the impression that she was going out with another man. On the morning of June 1, Betty, her two children, and her brother and his wife attended a family reunion picnic. The appellant followed them and drove by the picnic grounds several times without stopping. Later in the day, after Betty and her children had returned home, the appellant was seen chasing Betty in the trailer park and she was screaming. Witnesses saw the appellant take a pistol out of his pocket and shoot Betty. She fell to the ground and appellant ran for help. He and other persons put Betty in an automobile and took her to the hospital. The appellant sat in the back seat, holding Betty in his arms. He encouraged the driver to hurry to the hospital and continually assured Betty that she wouldn't die. Alas, she did.

The appellant served in the United States Army and, both while in the service and after his discharge, had on several occasions been hospitalized for a psychoneurotic condition. Prior to the time he shot Betty, the appellant had been taking a self-prescribed and self-compounded medication mixture of alcohol and sodium bromide or alcohol and potassium bromide for headaches and nervousness. The medication would sometimes cause him to "blank out." While taking this medication, the appellant would act in a bizarre manner. For example, he once asked his wife to accompany him into space. He opened the front door and talked as if there were someone at the door when, as a matter of fact, no one was there.

We will first concern ourselves with whether the trial court, in instructing the jury on murder, erroneously failed to include absence of extreme emotional distur-

bance and erroneously failed to instruct on first-degree manslaughter.

Murder is defined as follows:

"A person is guilty of murder when:

(a) With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any other crime; * * *"

The trial court instructed the jury as follows:

"Murder—You will find the defendant guilty under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

(a) That in this county on or about June 1, 1975, and before the finding of the indictment herein, he killed Betty Renfro by shooting her with a pistol; and

(b) That in so doing he intended to cause Betty Renfro's death.

If you find the defendant guilty under this instruction, you will fix his punishment at confinement in the penitentiary for not less than 20 years or at life, in your discretion."

 It is noticeable that the instruction given by the court contained no reference to the absence or presence of extreme emotional disturbance. In other words, the instruction given to the jury by the trial court did not require the jury to find absence of extreme emotional disturbance in order to convict the appellant of the offense of murder. It should have. A failure to act under the influence of extreme emotional disturbance is an element of the offense of murder, and if the evidence affords any basis upon which the jury could entertain a reasonable doubt as to whether appellant acted under the influence of extreme emotional disturbance, the absence of that element must be *enumerated* as a part of the instruction on murder, and an instruction on first-degree manslaughter, differing from the murder instruction only by the omission of that element, must be given. See *Ratliff v. Commonwealth*, Ky., 567 S.W.2d 307 (1978). In addition, the jury should be instructed to the effect that if it finds the appellant guilty but has a reasonable doubt as to whether he was acting under the influence of extreme emotional disturbance, it will not find him guilty of murder but shall find him guilty of first-degree manslaughter. See Palmore's Kentucky Instructions to Juries, Section 2.02, Instruction 5(a), and Section 1.06, 1979 Supplement. In the absence of an instruction on extreme emotional disturbance, the jury was not afforded a choice of murder or voluntary manslaughter in the first degree.

The Attorney General attempts to define extreme emotional disturbance to show that it is a derivative of what was formerly known as "heat of passion." We find it unnecessary to define extreme emotional disturbance. It is suffice to say that we know it when we see it. In the present case, we see sufficient evidence to justify a submission of the issue to the jury.

The appellant argues that the Commonwealth's Attorney should not have been permitted to testify and further argues that he engaged in improper closing argument. We find it unnecessary to decide whether the conduct of the Commonwealth's Attorney was prejudicially erroneous since upon retrial, hopefully, it will not reoccur.

 Counsel for appellant alleges that the trial court erred in not giving an instruction on the consequences of a verdict of "not guilty" by reason of appellant's plea of insanity. In *Edwards v. Commonwealth*, Ky., 554 S.W.2d 380 (1977), we dealt with an analogous situation. In disposing of the issue, we held that such an instruction was not necessary. *Edwards* is dispositive of the issue raised in the instant case.

The appellant charges that the trial court did not hold a competency hearing and failed to issue findings of fact and conclusions of law. In this he is mistaken. The record discloses that an in-camera hearing to determine appellant's competency to stand trial was held on December 14, 1976, and medical evidence was presented to the trial judge. The judge found that the appellant was competent to stand trial. Although not terming it findings of fact and conclusions of law, the court did make a finding from his conclusion and interpretation of the law. A transcript of the medical testimony given at the in-camera hearing to determine the appellant's competency to stand trial came from two psychiatrists, Dr. Cornelia Wilbur, who was called by the appellant, and Dr. John Corcella, who was called by the Commonwealth. Each of them had credentials qualifying her and him to speak on this issue. Dr. Wilbur may have spent more time in the treatment and care of the appellant than did Dr. Corcella; nevertheless, it cannot be said that the trial judge abused his discretion when he accepted the finding of Dr. Corcella and ruled that the appellant was competent to stand trial. See *Wiseman v. Commonwealth*, Ky., 587 S.W.2d 235 (1979).

During the course of the trial appellant's counsel attempted to introduce through Dr. Wilbur the appellant's medical records from the Veterans Administration Hospital in Louisville, Kentucky. The Commonwealth's Attorney objected and the trial court refused to permit the records to be introduced. The court was of the opinion that the records were not certified as required by CR 44.01. In view of the disposition that is being made of this appeal, it is not likely that this question will arise on a retrial since appellant will have ample opportunity to secure a certified copy of the records before his next trial. We respectfully refrain from passing on the propriety of the court's ruling on the admissibility of the appellant's medical records from the Veterans Administration Hospital.

Counsel for appellant attempted to challenge the competency of the Commonwealth's medical expert by criticizing a diagnosis that he made of one of his patients. Appellant also attempted to interject into the evidence a case history of a person suffering from bromide psychosis. There was testimony that the appellant was suffering from bromide psychosis. The trial court refused to permit this characterization. A trial court has wide discretion in permitting the introduction of testimony of this nature. We do not find that the action of the trial court was prejudicially erroneous.

Shortly after his arrest the appellant made a question-and-answer statement relative to his participation in the shooting of Betty Renfro. The interrogation was recorded by the Commonwealth's Attorney. This statement was transcribed from the tape so that the tape could be available for further use. In *Hendley v. Commonwealth*, Ky., 573 S.W.2d 662 (1978), we criticized the practice of erasing a statement from a tape recorder. There is no charge that the transcript is not an exact reproduction of the statement. As a matter of fact, appellant's trial counsel not only did not object to the use of this statement but before it was read to the jury stated as follows, "Your Honor, if he wants it read, I want him to put his copy into evidence. I have no objection, but Mr. Runyon has the original copy." We are not constrained to fault the trial judge for permitting the transcript to be introduced.

Counsel for appellant further argues that the evidence clearly demonstrates that there is no probative evidence that the appellant was sane at the time of the commission of the offense. Because the case is being reversed on other grounds, we do not find it necessary to reach this issue.

We do not reach the argument by appellant that the trial judge erroneously instructed the jury on the term "reasonable doubt" for the reason that RCr 9.56 was amended as of July 1, 1978, and no longer permits such an instruction.

In view of the disposition that is being made of this action, we do not reach the argument of appellant that the trial court erred in not following the presentencing

procedure provided for by KRS 532.050(1), (2), (3) and (4), nor do we reach his argument that the cumulative effect of all of the alleged errors prevented him from having a fair trial since this case is being reversed for a new trial irrespective of the cumulative effect of the alleged errors and the failure of the trial judge to follow KRS 532.050.

The judgment is reversed and this action is remanded to the Pike Circuit Court for a new trial in keeping with this opinion.

All concur, except STEPHENSON, J., who dissents and files a dissenting opinion.

STEPHENSON, Justice, dissenting.

I do not agree that there is sufficient evidence in this case to require an instruction on extreme emotional disturbance. To me this situation is comparable to that in *Ratliff v. Commonwealth*, Ky., 567 S.W.2d 307 (1978). I dissented there for the same reason. I do not find any other errors unfairly prejudicial to the appellant. I would affirm.