**William R. STAR, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000203–MR.

Supreme Court of Kentucky.

May 20, 2010.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Susan Roncarti Lenz, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Throughout most of his life, including around the time of the crimes in this case, Appellant, William R. Star, suffered from severe mental illness. He was admitted to a mental treatment facility from February 1997 to April 1999, where he was diagnosed with a paranoid delusional disorder. He checked himself into a mental hospital in July 2004, where he was diagnosed with paranoid schizophrenia. A doctor testified that, in February 2006, Appellant was "severely mentally ill," a description that was documented in his hospital records.

As is common of paranoid schizophrenics, Appellant suffered from recurring delusions. He told people that he was God, or Jesus, or at least that he had their powers. He thought that his grandfather, uncle, and an elementary school teacher could predict the future, and he had auditory hallucinations of them relaying their predictions to him. In addition, Appellant had recurring delusions that he was being poisoned, or that people were otherwise trying to harm him. In early September 2006, Appellant became convinced that he had been poisoned because he had become sick for approximately two weeks. He thought that Jeff Mattox and Geraldine Litton had poisoned him.

On September 18, 2006, after drinking approximately twelve beers, Appellant took his pistol and went to find Mattox and Litton at their home. He shot Mattox in the chest, killing him. He then shot Litton, puncturing her lung. After shooting Litton, Appellant took her towards a house down the road. He was soon followed by the third victim, Billy Proctor, who had come to render aid to Litton. Appellant shot Proctor in the face, killing him. Appellant testified that he did so because he thought Proctor was evil and was going to

harm Litton. Litton was later treated at a hospital and survived.

Appellant was found guilty but mentally ill of two murders, one kidnapping, and one assault. He was sentenced to imprisonment for a term of 30 years and appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). On appeal, Appellant raises six issues: (1) whether the trial court erred in denying Appellant's directed verdict on all counts because he was not criminally responsible; (2) whether the verdict of guilty but mentally ill should have been declared unconstitutional by the trial court; (3) whether the trial court erred in refusing to instruct the jury on Appellant's burden of proof for his insanity defense; (4) whether the trial court erred in refusing to grant a mistrial after a detective suggested Appellant invoked his right to remain silent; (5) whether the trial court erred in refusing to allow Appellant to cross-examine a witness about her pending criminal cases; and (6) whether Appellant's right to confront witnesses against him face-to-face was violated.

### Directed verdict on all counts

Appellant first argues that he was entitled to a directed verdict on all counts because he was not criminally responsible for his actions. Thus, the issue we address is whether "[i]t would not be clearly unreasonable for a jury to find against the defendant on the issue of insanity[.]" *Port v. Commonwealth*, 906 S.W.2d 327, 330 (Ky.1995) (quoting *Ice v. Commonwealth*, 667 S.W.2d 671 (Ky. 1984)). This, of course, is based on the evidence of record, inclusive or exclusive of expert testimony.

Where one chooses to rely upon insanity as a defense, the burden rests upon him to prove to the satisfaction of the jury that at the time the offense was committed, as a result of a mental disease or defect, he lacked substantial capacity ei-

ther to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

*Edwards v. Commonwealth*, 554 S.W.2d 380, 383 (Ky.1977) (citing KRS 504.020). After carefully reviewing the testimony presented herein, we do not believe that it was clearly unreasonable for the jury to find against Appellant on the issue of insanity.

Appellant admitted to shooting three people—killing two of them and seriously injuring the third—under the false impression that at least two of the victims had attempted to poison him. While there was expert testimony offered to show that Appellant could not appreciate the criminality of his conduct or conform his conduct to the requirements of the law, there was also ample testimony, some from Appellant himself, which indicated the opposite. Appellant testified that he walked away from the scene of the shooting because he was looking for an escape route. In addition, Appellant told onlookers at the scene to tell the police they could get him in the morning, because he wanted to get some rest before they arrived.

Geraldine Litton also testified that, although Appellant intended to shoot her a second time, she asked him not to do so and he complied with her request. A psychiatrist who interviewed Appellant a few days after the shootings stated that Appellant knew it was wrong and illegal to kill someone. The court-appointed psychiatrist testified that Appellant showed an ability to control his actions, because he did not attempt to murder other people whom he also believed were poisoning him.

We have little doubt concluding that Appellant suffers from a serious mental disease. However, "[a] mental disease which does not in itself result in a lack of capacity to appreciate the criminality of

one's conduct or to conform one's conduct to the requirements of law does not rise to the level of insanity, nor does it, in itself, constitute extreme emotional disturbance." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468 (Ky.1986). The burden of proof as to the question of a defendant's sanity at the time of a homicide never shifts from the defendant. *Wainscott v. Commonwealth*, 562 S.W.2d 628 (Ky.1978). *See also Edwards*, 554 S.W.2d at 383 ("[T]he introduction of proof of insanity by a defendant does not place a burden on the Commonwealth to prove him sane; rather, it entitles the defendant to an instruction to the jury that they may find him not guilty by reason of insanity, and thus properly makes the issue of insanity a matter for the jury's determination.").

This Court has long held that a motion for a directed verdict in a case involving an insanity defense would be defeated as long as there was "some evidence" indicating that the defendant was sane at the time of the commission of the crime; i.e., his mental problems did not preclude him from conforming his conduct to the requirements of law. *Tunget v. Commonwealth*, 303 Ky. 834, 198 S.W.2d 785 (1947). That threshold is certainly met in this case. Accordingly, we do not believe that it was clearly unreasonable for the jury to find against Appellant on the issue of insanity. As such, there was no error.

### Constitutionality of guilty but mentally ill verdict

■ Appellant's next allegation of error is based on the constitutionality of giving the jury an option to find a verdict of guilty but mentally ill. The crux of Appellant's complaint is that this option confused the jury so that they did not return a not guilty by reason of insanity verdict. Appellant believes that the promise of treatment lured the jury into returning a guilty but mentally ill verdict rather than a not guilty by reason of insanity verdict, but contends that such a verdict does not necessarily guarantee that a defendant will receive treatment while in prison. In support of this argument, Appellant introduced the affidavit of Deputy Warden Paige McGuire, who oversees the Correctional Psychiatric Treatment Unit at the Kentucky State Reformatory. In her affidavit, the Deputy Warden stated that the guilty but mentally ill verdict has "no impact on the classification process nor the psychiatric treatment provided." Further, she noted that the Department of Corrections conducts "its own independent evaluation and will provide appropriate psychiatric care." This, Appellant maintains, shows that the guilty but mentally ill verdict is a "charade." Appellant argues that such a verdict violates his due process rights, is unconstitutionally vague, and constitutes cruel and unusual punishment, as it may result in an insane person being found criminally responsible. In addition, Appellant argues that the jury instructions were inadequate. We disagree.

■ KRS 504.120(4) authorizes the verdict of guilty but mentally ill at the time of the offense. According to KRS 504.130(1), a defendant may be found guilty but mentally ill if "[t]he prosecution proves beyond a reasonable doubt that the defendant is guilty of an offense; and [t]he defendant proves by a preponderance of the evidence that he was mentally ill at the time of the offense." Once a guilty but mentally ill verdict is reached, "treatment shall be provided the defendant until the treating professional determines that the treatment is no longer necessary or until expiration of his sentence, whichever occurs first." KRS 504.150(1). Thus, the guilty but mentally ill verdict is intended to provide an "in-between" classification whereby a defendant bears the legal responsibility for criminal conduct, but is provided treat-

ment while incarcerated for mental illness. *People v. Jackson*, 80 Mich.App. 244, 263 N.W.2d 44 (1977).

Appellant points to no evidence supporting the proposition that guilty but mentally ill verdicts increase the possibility of improper compromises by the trier of fact. Appellant has not cited, and we cannot find, any authority indicating that compromise by the trier of fact is inconsistent with due process. To the contrary, the great weight of authority states that such verdicts do not lead to improper compromise verdicts. *See People v. Smith*, 124 Ill.App.3d 805, 80 Ill.Dec. 310, 465 N.E.2d 101 (1984); *People v. Ramsey*, 422 Mich. 500, 375 N.W.2d 297 (1985); *Commonwealth v. Trill*, 374 Pa.Super. 549, 543 A.2d 1106 (1988); *State v. Neely*, 112 N.M. 702, 819 P.2d 249 (1991); *State v. Baker*, 440 N.W.2d 284 (S.D.1989). It seems Appellant is suggesting that, given the choice between verdicts of not guilty by reason of insanity and guilty but mentally ill, jurors in this case chose the latter because of the alleged similarity and confusion between the two verdicts. We believe this supposition is entirely too speculative and presupposes that jury compromise occurs in every case where more than one verdict or charge is submitted to the jury. Put another way, there is no indication that "but for" the guilty but mentally ill instruction, the jury would have found Appellant not guilty by reason of insanity. If Appellant believed that the jury improperly arrived at a compromise verdict, he was free to poll the jurors.

 Nor do we believe that the guilty but mentally ill verdict constitutes cruel and unusual punishment. Such a verdict merely allows for accommodation of the mental health needs of those defendants who are guilty, but have a mental disorder that falls short of insanity and delusional compulsion. Appellant's argument misap-

prehends the nature of the guilty but mentally ill finding. A guilty but mentally ill offender is no less guilty than one who is guilty and not mentally ill. Unlike an insanity verdict, a guilty but mentally ill finding or plea does not relieve an offender of criminal responsibility for his conduct. Appellant's situation must be distinguished from that of a person who has been found not guilty by reason of insanity. A person found not guilty by reason of insanity is one who "lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." KRS 504.020(1). A finding of insanity functions as a complete defense to conviction. *See Vaughn v. Commonwealth*, 204 Ky. 229, 263 S.W. 752 (1924). A defendant who is mentally ill, but not insane, cannot make a similar claim. By definition, the guilty but mentally ill offender is able to appreciate the wrongfulness of his behavior and is able to conform his conduct to the requirements of law. With respect to that offender, deterrence and retribution then remain valid considerations in his punishment. *See Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

In addition, we find no error in the jury instructions in this case. In *Brown v. Commonwealth*, 934 S.W.2d 242, 246 (Ky. 1996), this Court stated that the "constitutionality of the guilty but mentally ill statute depends, at least in part, upon how the jury is instructed in the rendering of such a verdict." In this case, the trial court used the following instruction, provided by defense counsel:

If you find William Star guilty of one or more of the offenses mentioned in these instructions, but further believe from the evidence that at the time he committed the offense or offenses he was suffering from a mental illness, as that term is defined in these Instruc-

tions (but was not insane), you shall state in your verdict that you find Mr. Star guilty of the offense, but mentally ill.

If you find William Star guilty but mentally ill, he will be sentenced in the same manner as a defendant found guilty but not mentally ill. Treatment may or may not be provided while Mr. Star is incarcerated depending on (1) whether or not the state makes funds available to the Department of Corrections to provide such treatment, and (2) whether or not the correctional mental health professionals believe treatment is necessary at the time he is evaluated at the prison.

These instructions fully comply with and alleviate any concerns expressed by this Court in *Brown.*

 The constitutionality of guilty but mentally ill verdicts has been an issue courts across this country have faced. "To date no case has been found in which an appellate court has held a guilty but mentally ill statute to be unconstitutional." Debra T. Landis, J.D., *"Guilty But Mentally Ill" Statutes: Validity and Construction,* 71 A.L.R.4th 702, 707 (1989). It has long been held that a statute enacted by the General Assembly carries a strong presumption of constitutionality. *Martinez v. Commonwealth,* 72 S.W.3d 581, 584 (Ky.2002). A statute will not be invalidated as unconstitutional unless it clearly, unequivocally, and completely violates provisions of the Constitution. *Cornelison v. Commonwealth,* 52 S.W.3d 570, 572 (Ky. 2001). Further, the party questioning the constitutionality of a statute bears the burden of proving its contention. *Id.* at 572–73. Appellant has simply not met that burden in this case. As such, we find no error.

### Refusal to instruct on burden of proof for insanity defense

 Appellant argues that the trial court's refusal to instruct the jury that he was required to prove insanity by a preponderance of the evidence was error. We disagree. In *Brown v. Commonwealth,* 934 S.W.2d at 247, this Court reaffirmed our reluctance to use the word "preponderance" in jury instructions. As trial counsel was fully able to articulate this burden to the jury, we find no error.

### Refusal to grant mistrial

 Appellant next argues that the trial court erred in failing to grant a mistrial after Detective Goble told the jury that Appellant had invoked his right to counsel and his right to remain silent. *See Hall v. Commonwealth,* 862 S.W.2d 321, 323 (Ky. 1993) ("It is clear that the prosecution is prohibited from using the defendant's silence in its case-in-chief."). However, upon review of the record in this case, no mention of Appellant's invocation of these rights was made. The statement in question was the following: "I actually rehearsed his Miranda warnings to him, and that's when he told me he wanted...." At this point, Detective Goble's testimony was interrupted by defense counsel's objection. Because Detective Goble never finished his statement, the trial court denied Appellant's motion.

 On review of the denial of a motion for a mistrial, the applicable standard is abuse of discretion. *Martin v. Commonwealth,* 170 S.W.3d 374, 381 (Ky.2005). We find that the trial court did not abuse its discretion here.

### Refusal to allow cross-examination of witness about pending criminal cases

 During cross-examination of Geraldine Litton, defense counsel attempted to show that she was currently facing

several charges in Martin County. The trial court sustained the Commonwealth's objection, and, as a result, Appellant maintains that he was unable to fully and effectively cross-examine Ms. Litton.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). However, this right to confrontation is not limitless. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 679, 106 S.Ct. 1431 (citations omitted) (emphasis in original). The U.S. Supreme Court has held that "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*

This Court has long recognized the principle that a defendant has a right to expose the fact that a testifying witness who has criminal charges pending "thereby [may possess] a motive to lie in order to curry favorable treatment from the prosecution." *Williams v. Commonwealth*, 569 S.W.2d 139, 145 (Ky.1978). Such a showing of bias can be important because, "unlike evidence of prior inconsistent statements—which might indicate that the witness is lying—evidence of bias suggests *why* the witness might be lying." *Stephens v. Hall*, 294 F.3d 210, 224 (1st Cir.2002) (emphasis in original).

Accordingly, in the instant case, we believe it was error for the trial court to sustain the Commonwealth's objection

to the introduction of pending charges against Ms. Litton. Even so, however, the

> [c]onstitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . . harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.

*Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431.

Given the testimony offered by Ms. Litton, we believe the exclusion of the criminal charges was harmless beyond a reasonable doubt. The seminal issue in this case was whether or not Appellant was criminally responsible for the crimes charged. Ms. Litton's testimony, on the other hand, focused primarily on retelling the uncontroverted facts that occurred on September 18, 2006. This testimony was corroborated by virtually every witness the Commonwealth called, as well as Appellant's own testimony. Because this testimony did not concern Appellant's mental state at the time of the crime, we cannot see how the lack of evidence regarding the pending Martin County charges was prejudicial. Even assuming the "the damaging potential of the cross-examination were fully realized," there was more than ample evidence, including Appellant's own admissions, that he committed the crimes charged.

Therefore, we believe that the trial court's denial of the introduction of evidence concerning pending charges against Ms. Litton was in error, but was harmless beyond a reasonable doubt.

### Right to confront witnesses face-to-face

Lastly, Appellant complains that the physical layout of the courtroom

precluded him from being able to confront the witnesses face-to-face. *See* Ky. Const. § 11 ("In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."). *See also Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) ("We have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact."). The courtroom was set up in such a way that made it difficult, if not impossible, for anyone seated in the witness stand to see Appellant, who was seated at the table with his defense counsel. This became apparent during the testimony of both Geraldine Litton and Willie Sparks, who had to physically leave the witness stand in order to identify Appellant for the record. At the same time, Appellant, when seated at defense table, was unable to view the testifying witness. Appellant's trial counsel apparently declined an offer to move about the courtroom to alleviate this problem prior to trial. Eventually, defense counsel agreed to use a television monitor located at defense table, which allowed Appellant to view the witness. Though taking this accommodation, defense counsel repeated his objection, stating that he believed there was a confrontation issue due to Appellant being unable to physically face the witnesses.

 Appellant points to the U.S. Supreme Court's decision in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), which sets forth a test delineating those times when the right to face-to-face confrontation may be excused. *Craig* states that "a defendant's right to confront accusatory witnesses may be sat-

isfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850, 110 S.Ct. 3157. *See also Coy v. Iowa, supra.* We agree with Appellant that the physical layout of the courtroom produced a Confrontation Clause violation, and we must now determine whether the error was harmless beyond a reasonable doubt. *See Sparkman v. Commonwealth*, 250 S.W.3d 667 (Ky. 2008).

 The problem with Appellant's reliance on *Craig* and *Coy*, however, is that those two cases involved fundamentally different scenarios than that which is present here. The basic facts of this case are not in dispute. The record is clear that Appellant admitted to shooting Jeff Mattox, Geraldine Litton, and Billy Proctor. While face-to-face confrontation is preferred, it is not the *sine qua non* of the confrontation right. *Craig*, 497 U.S. at 847, 110 S.Ct. 3157. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Id.* at 845, 110 S.Ct. 3157. Indeed, "face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." *Id.* at 846, 110 S.Ct. 3157.

In *Sparkman*, this Court was confronted with a similar issue. There, the prosecutor stood between the defendant and two testifying child witnesses during direct examination. Though finding a Confrontation Clause violation, this Court held that the error was harmless. *Sparkman*, 250 S.W.3d at 671. Much like in this case, the basic facts were uncontroverted, with "the only differences between the testimony of

Appellant and the victim [being] the manner in which Appellant was alleged to have entered the victim's house and the number of times he struck the victim." *Id.* at 670. Arguably, the violation in that case was more severe than what we find here today, as there was some factual dispute.

Unlike *Sparkman,* the evidence in this case was not predicated upon a he-said, she-said description of the events occurring on September 18, 2006. To the contrary, the sole issue in contention in this case was whether Appellant was criminally responsible for his actions. "A determination of prejudicial error by this Court would require some showing that Appellant's unobstructed observation would have affected the substance and credibility of the ... witnesses." *Id.* at 671. In this case, Appellant has made no such showing. Accordingly, we believe that the error was harmless.

We note, however, that trial judges are courting with danger by tolerating any kind of courtroom arrangement which impedes eye-to-eye contact between the defendant and witnesses. In this case, as in *Sparkman,* it did not loom critical, but in the next case it might.

For the reasons stated herein, we hereby affirm the judgment of the Johnson Circuit Court.

All sitting. All concur.