# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 17, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0682-MR

JAMAL S. MOUNTS                                            APPELLANT

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
V.                            HONORABLE ANDREW SELF, JUDGE
NO. 14-CR-00137

COMMONWEALTH OF KENTUCKY                     APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Jamal S. Mounts was convicted following a jury trial in Christian Circuit Court on charges of murder, attempted murder, and burglary in the first degree. On motion of the Commonwealth, charges of assault in the fourth degree and resisting arrest were dismissed after the verdict was rendered but prior to the sentencing phase. Mounts received a sentence of life imprisonment for the murder and twenty years on each of the other two counts, with the sentences to be served concurrently. He now appeals as a matter of right[1] raising two allegations of error. We affirm.

On March 1, 2014, Mounts viciously attacked his mother, Roxie Mounts, at her apartment. Roxie suffered blunt force trauma to the head which

---

[1] Ky. Const. §110(2)(b).

collapsed her face, orbital socket, jaw, and nose. Mounts inserted wood into her mouth, lacerating her throat. Roxie sustained injuries to her anus and colon after Mounts shoved wood into her rectum. She had bruising on her back and left arm, as well as abrasions on her chest and right arm. Roxie ultimately suffocated to death because her facial injuries constricted her airway.

Prior to her death, Roxie was able to contact 911 and three officers from the Hopkinsville Police Department responded to the scene. Upon their arrival, officers found Roxie lying in the breezeway and observed one apartment door ajar. One officer tended to Roxie while another entered the open door to clear the apartment. At about the same time, screams were heard from a neighboring apartment and blood was observed on that doorway. Upon making entry, the third officer saw Mounts, naked and covered in blood, on top of Marvelyn Spray with his hand shoved into her mouth. The officer wrestled Mounts off of Spray. After two Taser attempts and multiple hand strikes failed to subdue Mounts, the officer struck him several times with his baton, finally bringing the horrific attacks to an end. Although Mounts did not converse with officers, they believed his behavior was consistent with someone who was "on drugs."

Mounts was transported to the hospital. During the drive, Mounts talked about his sister who had died in a car wreck. He also said his mother was dead and admitted he had killed her. Mounts was subsequently indicted

2

by a Christian County grand jury for murder, attempted murder, burglary, assault, and resisting arrest.

Prior to trial, Mounts was ordered to undergo a psychiatric evaluation at the Kentucky Correctional Psychiatric Center (KCPC) to assess any mental illnesses and to determine competency and criminal responsibility.[2] During the evaluation with Dr. Daniel Hackman, Mounts discussed a 2012 head injury and denied visual or auditory hallucinations although he had previously told others he heard the word "kill" around the time he killed his mother and told Dr. Hackman he heard lions roaring. Mounts admitted lying to jail staff about being suicidal to get out of the "hole." He also stated he exaggerated symptoms in an effort to be found incompetent to stand trial.

Dr. Hackman believed any psychosis Mounts suffered near the time of the murder was caused by illicit drug use based on admissions of Mounts being a chronic marijuana user and his using "spice" and Ecstasy in the days leading up to the offenses. At a subsequent competency hearing, Dr. Hackman testified to his findings and stated he did not believe Mounts qualified for a verdict of Not Guilty by Reason of Insanity nor did he believe Mounts suffered from mental illness at the time of the offenses or the subsequent evaluation. Mounts was determined to be competent to stand trial.

---

[2] Mounts had previously been admitted to KCPC shortly after the murder. After determining he was malingering, Mounts was returned to jail. For reasons unclear from the record, nearly four and a half years passed before Mounts was ordered to return to KCPC for a second evaluation.

Following a jury trial, Mounts was found guilty on all counts of the indictment. As previously stated, the Commonwealth dismissed the assault and resisting arrest charges prior to the sentencing phase. In accordance with the jury's recommendation, Mounts was sentenced to an aggregate term of life imprisonment. This appeal followed.

Mounts raises two allegations of error in seeking reversal. First, he asserts he was denied due process because the Commonwealth misstated the burden of proof relative to an insanity defense during its closing summation. Second, Mounts contends the trial court erred in failing to instruct the jury on voluntary and involuntary intoxication. We disagree with his allegations and affirm.

During closing arguments, the Commonwealth noted it had the burden of proving Mounts intentionally or wantonly caused Roxie's death. In further discussing the instructions, the Commonwealth noted subsection C of the murder instruction required the jury to find Mounts was not insane at the time of the killing, insanity was defined elsewhere in the instructions, and "that burden is not on me." Defense counsel objected, arguing the Commonwealth had misstated the law. At an ensuing bench conference, defense counsel claimed the initial burden was on the defense to show by a preponderance of the evidence that Mounts was insane, and after doing so, the burden shifted to the Commonwealth to prove beyond a reasonable doubt Mounts was not insane. The trial court opined the instructions were correct as written and both parties agreed. The trial court went on to conclude the Commonwealth's

4

statement was not inaccurate, but it was incomplete. An admonishment was offered but the Commonwealth requested it be permitted to clarify the burden of proof and defense counsel agreed. Back before the jury, the Commonwealth explained when a defendant alleges insanity as a defense, the initial burden rests on the accused and the Commonwealth must respond to the proof offered regarding insanity. No further objections were raised.

Later in its summation, the Commonwealth stated the jury had to find Mounts suffered from a mental disease or defect to conclude his actions should be excused on the basis of insanity. Based on Dr. Hackman's testimony no such mental disease or defect existed, the Commonwealth argued for the jury to find Mounts was insane, it would have to conclude beyond a reasonable doubt Dr. Hackman was "just flat wrong, 100 percent." Defense counsel objected, arguing the burden of proof for insanity was preponderance of the evidence rather than beyond a reasonable doubt as the Commonwealth had asserted. An admonition was requested but defense counsel subsequently agreed to permit the Commonwealth to correct the misstatement. The Commonwealth then informed the jury, "I stand corrected. You must believe by a preponderance of the evidence that [Dr. Hackman] is wrong." Mounts raised no more objections and did not request an admonition.

Mounts now asserts the Commonwealth twice misstated the law in its closing summation resulting in a fundamentally unfair trial. More specifically, Mounts argues once he established his insanity by a preponderance of the evidence, the burden shifted to the Commonwealth to disprove insanity beyond

5

a reasonable doubt and any statements to the contrary during summation prejudiced the jury against him. At trial, all parties and the trial court incorrectly agreed this was the appropriate standard to be applied. That is not the law of this Commonwealth.

> Where one chooses to rely upon insanity as a defense, the burden rests upon him to prove to the satisfaction of the jury that at the time the offense was committed, as a result of a mental disease or defect, he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

*Edwards v. Commonwealth*, 554 S.W.2d 380, 383 (Ky. 1977) (citing KRS 504.020).

> The burden of proof as to the question of a defendant's sanity at the time of a homicide never shifts from the defendant. *Wainscott v. Commonwealth*, 562 S.W.2d 628 (Ky. 1978). *See also Edwards*, 554 S.W.2d at 383 ("[T]he introduction of proof of insanity by a defendant does not place a burden on the Commonwealth to prove him sane; rather, it entitles the defendant to an instruction to the jury that they may find him not guilty by reason of insanity, and thus properly makes the issue of insanity a matter for the jury's determination.").

*Star v. Commonwealth*, 313 S.W.3d 30, 35 (Ky. 2010).

Even more recently, in *Biyad v. Commonwealth*, 392 S.W.3d 380 (Ky. 2013), this Court reiterated our earlier holdings and again expressly held the model of burden shifting, as advanced by Mounts, has no applicability relative to insanity defenses. Rather, the question is whether it would be clearly unreasonable for the fact-finder to find against a defendant on the issue of insanity when viewing the evidence adduced at trial as a whole. *Id.* at 383 (citing *Port v. Commonwealth*, 906 S.W.2d 327, 330 (Ky. 1995)). Having

6

reviewed the record, we cannot say the jury's rejection of Mounts' insanity defense was clearly unreasonable.

The jury was presented testimony about his conduct and demeanor around the time of the crimes from Mounts' brother and sister who each described him as "acting crazy;" the arresting officers who believed Mounts exhibited signs of someone on drugs; the transporting officer who relayed a rational conversation he had with Mounts shortly following the crimes; and Dr. Hackman who opined Mounts suffered from no mental illness or defect when he committed the crimes nor at subsequent times when he was evaluated prior to trial. Notably, no testimony was adduced that Mounts was unable to appreciate the criminality of his conduct or resist the impulse to commit the illegal acts. Thus, we conclude there was sufficient evidence presented to support the decision of the jury to reject Mounts' assertion of insanity.

As we have previously stated, the burden of proving insanity never shifts from the defendant. Although the parties were confused as to the law, and the flawed view was put to the jury during summation, we discern no prejudice to Mounts as the misstatement of the law substantially lessened his burden. Further, although the jury was not properly instructed on the burden of proof regarding insanity as a defense to the crimes charged, the error acceded to Mounts' benefit as the instructions required the jury to "believe from the evidence beyond a reasonable doubt" that he was not insane at the time the crimes were committed, thereby shifting the entirety of the burden to the Commonwealth. Although the instructions were erroneous, and the

7

Commonwealth espoused an incorrect statement of the law, these errors benefitted Mounts and were harmless at best. Reversal is not required.

Finally, Mounts contends the trial court erred in failing to instruct the jury on voluntary and involuntary intoxication as he believes the evidence adduced at trial required the trial court to include them in its instructions. Mounts' assertions to the contrary, his allegation of error was not properly preserved for appellate review. No request for a voluntary or involuntary intoxication instruction was made during trial and no such instruction was tendered by defense counsel. The sole mention of intoxication instructions occurred during a bench conference following a competency hearing held prior to trial. Defense counsel twice mentioned the potential for needing such instructions "maybe" and "depending on the proof, obviously." No formal request was made for intoxication instructions, no such instructions were tendered to the trial court, the matter was not brought to the trial court's attention during the trial, and no objection was raised prior to the trial court's reading of the instructions to the jury.

While unpreserved errors are normally subject to palpable error review under RCr[3] 10.26, Mounts has made no such request. Had he done so, such review is unavailable in cases where the unpreserved error concerns the failure of a trial court to give a particular instruction. *Martin v. Commonwealth*, 409

---

[3] Kentucky Rules of Criminal Procedure.

S.W.3d 340, 345 (Ky. 2013) (holding palpable error review barred by RCr

9.54(2)[4] for unpreserved claim trial court erroneously gave or failed to give

specific instruction).

> It is, of course, the duty of the trial judge in a criminal case to instruct the jury "on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Swan v. Commonwealth*, 384 S.W.3d 77, 99 (Ky. 2012) (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999)); *see also* RCr 9.54(1). A criminal defendant is entitled to "have every issue of fact raised by the evidence and material to the defense submitted to the jury on proper instructions." *Thomas v. Commonwealth*, 170 S.W.3d 343, 349 (Ky. 2005) (citing *Hayes v. Commonwealth*, 870 S.W.2d 786, 788 (Ky. 1993)). However, RCr 9.54(2) puts the burden on the parties to make their instructional preferences known to the trial judge.

*Id.* Here, we cannot say Mounts fairly and adequately presented the trial court

his preference for "the giving or failing to give" a specific jury instruction.

Whether by choice or omission, Mounts failed to apprise the trial court of his

desire for the instructions he now claims were required to be given. Thus,

consideration of his allegation of instructional error is barred by operation of

RCr 9.54 and further review, palpable or otherwise, is foreclosed.

For the foregoing reasons, the judgment of the Christian Circuit Court is

AFFIRMED.

---

[4] RCr 9.54(2) states:

> (2) No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Kristin Leigh Conder
Assistant Attorney General